Mrs. Barbara H. Boling

*v.*

Raytheon Company

448 S.W.2d 405.

(*Knoxville,* September Term, 1969.)

Opinion filed December 15, 1969.

Slaughter & Jackson, Bristol, for appellee.

Edwin L. Treadway and Hunter, Smith, Davis, Norris, Waddey & Treadway, Kingsport, for appellant.

Mr. Chief Justice Dyer delivered the opinion of the Court.

This is a workmen's compensation case and the parties are referred to as in the trial court; that is, Mrs. Barbara H. Boling as petitioner, and the Raytheon Company as defendant. The chancellor awarded petitioner certain benefits resulting in the appeal here by defendant.

Petitioner, female, age 39, had been employed by the defendant for about nine years wiring and soldering small electrical instruments, each weighing three to four pounds. This type of work is done by sitting in a chair at a table and required petitioner to keep her body in a fixed position with head down for about seven hours each working day. Petitioner alleged that "frequently attaining this position and maintaining it for a long period of time produced repeated trauma in petitioner's neck and back to the extent that the muscles, vertebra and disc interspaces of her neck have been injured by accident repeatedly."

Petitioner testified that in November, 1967, she began to experience pain in her neck and shoulder which would intermittently become worse and better, that maintaining a fixed position required by her work for long hours left

her numb, and it was difficult to straighten up. That her last day of work for defendant was June 27, 1968, and on the date of the trial, December 13, 1968, she was still suffering pain in her neck and shoulders.

Petitioner was seen by Dr. James G. McFaddin, an orthopedic surgeon, on July 23, 1968, August 10, September 10, September 28, and December 10, 1968. Dr. McFaddin, as a witness for petitioner, testified as follows: That petitioner was suffering from cervical neuritis, secondary to degenerative arthritis, which was aggravated by the posture and tension. That this condition was chronic and of long standing; that the fixed position for long hours petitioner had to assume at work did contribute to her complaints; that petitioner's condition was of a temporary nature and if she could adjust her routine to where she would not maintain her head and neck in a fixed position she would make an excellent recovery.

Dr. Thomas H. Kuhnert, an orthopedic surgeon, testified as a witness for defendant. We find no material difference between the testimony of Dr. Kuhnert and Dr. McFaddin.

The defendant assigns error as follows:

The court erred in finding that petitioner sustained injuries by accident arising out of and in the course of her employment with the defendant, and, hence, the court erred in finding that there was material evidence to support a decree in favor of the petitioner and against defendant.

In order to remove a problem it should be noted that petitioner does not allege an event that was unforeseen, unexpected or fortuitous. The claim for compensation is

based solely on the allegations that the frequent attaining and maintaining a fixed posture position for long periods of time produced repeated trauma in petitioner's neck and back to the extent that the muscles, vertebra and disc interspaces of her neck had been injured by accident repeatedly.

It is insisted that the case at bar is controlled by the holding in *Brown Shoe Company v. Reed,* 209 Tenn. 106, 350 S.W.2d 65 (1961). In the *Brown* case the employee by the nature of his work was required to place a severe strain on his arm, causing the ulnar nerve to jump out of its normal position and rub across one of the bones of the elbow. This repeated movement over a period of time damaged the ulnar nerve, resulting in a disability for which compensation was claimed.

■ The distinction between the *Brown* case and the case at bar involves the relationship of the disabling injury to the employment. In the *Brown* case the employment caused the disabling injury; that is, the damaged nerve. In the case at bar the disabling injury is cervical neuritis secondary to degenerative arthritis, a condition which under the medical proof was not related to the employment, although the fixed posture required of petitioner did increase the pain. It is true pain can be a disabling injury, but for such to be compensable it would have to be from a work related injury.

Petitioner in her brief cites the following medical testimony as supporting her claim of work related disability. Dr. McFaddin was asked and answered the following questions:

Q. Do you have an opinion, sir, as to what effect if any, the tedium of performing the work that you have

described coupled with the postural requirements of her conducting her work, have on her condition, as manifested at the time you examined her?

A. Yes. It is my impression that the posture that she assumed at work did contribute to her complaints. This is a very common malady or disorder that we run into in people that do this type of electrical assembly. We also find it in women that do seamstress work.

Dr. Kuhnert was asked and answered the following questions:

The Court: Would it aggravate and contribute to a pre-existing arthritic condition and degenerative condition?

A. I think, if you are using the word aggravating, would it make it hurt worse?

The Court: Yes.

A. Yes.

These two doctors answering the questions in regard to the relationship between petitioner's work requiring a fixed postural position for long hours and her injury are saying the same thing. Dr. McFaddin stated petitioner's work did contribute to her complaints. Her complaints were pain in the shoulder and neck. Dr. McFaddin does not say petitioner's work caused or contributed to her disabling injury of cervical neuritis, secondary to degenerative arthritis. Dr. Kuhnert is simply saying petitioner's work would cause her cervical neuritis, secondary to degenerative arthritis to hurt worse.

In the *Brown Shoe Company v. Reed,* supra, case, this Court gave a definition of the word "accident," as such

is used in our workmen's compensation statute in the following language:

> An accident is generally an unlooked for mishap, an untoward event, which is not expected or designed. Generally in most such cases this Court has repeatedly said that a compensable injury should be the result of something happening by accidental means though the act involving the accident was intentional. Accidental means ordinarily mean an effect which was not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing. It is produced by means which were neither designed nor calculated to cause it. It cannot be reasonably anticipated, it is unexpected, it is produced by unusual combinations of fortuitous circumstances and such an injury is an injury by accidental means. 209 Tenn. at 114-115, 350 S.W.2d at 69.

As we have previously noted in this opinion, petitioner suffered no mishap or untoward event. The act here of a required fixed postural position was intentional and had it resulted in a disabling injury to the body which was not the natural or probable consequences of that act, then such would have been an accident as this word is used in our workmen's compensation statutes. This was the situation in *Brown Shoe Company v. Reed,* supra, but it is not the situation in the case at bar. In the case at bar the fixed postural position did not result in or cause petitioner's disabling injury. Under the medical evidence such was caused by the aging process, although the aging process varies in different individuals.

In substance, what we have here is an employee with a disabling injury or disease not related to employment, but the employment does aggravate the disabling injury or disease by making the pain worse. This situation does not constitute an ''accident'' as this word is used in our workmen's compensation statutes.

The judgment of the chancellor is reversed and the cause dismissed.

CRESON and McCANLESS, JUSTICES, and JENKINS and BOZEMAN, SPECIAL JUSTICES, concur.