Glenda Sue TALLEY, Plaintiff/Appellee,

v.

The VIRGINIA INSURANCE RECIPROCAL, Defendant/Appellant.

Supreme Court of Tennessee, at Jackson.

July 3, 1989.

Rehearing Denied Aug. 7, 1989.

Carthel L. Smith, Jr., Lexington, for plaintiff/appellee.

John D. Burleson, R. Dale Thomas, Rainey, Kizer, Butler, Reviere & Bell, Jackson, for defendant/appellant.

## OPINION

O'BRIEN, Justice.

In this workers' compensation case the employer appeals from the judgment of the lower court awarding permanent and total disability for injuries resulting from a work-related accident.

The appellant has raised five (5) issues for resolution:

(1) Whether the employee sustained a "fall" during the course and scope of her employment.

(2) Did the trial judge err in refusing to allow the admission of certain testimony proffered in evidence by appellant.

(3) Did the employee give appropriate notice of her alleged injury within the statutory thirty (30) day period.

(4) Is the disability suffered by the employee and the accompanying surgery causally connected with the fall sustained by her in the course of her employment.

(5) Is the employee permanently and totally disabled.

The appellee has restated the issues having found them not entirely to her satisfaction as outlined in appellant's brief. This difference is not of any substantial significance since the determinative issue is if the appellee's surgery and disability were causally connected to her employment.

The complaint filed in the lower court alleges that on or about 3 January 1987 while engaged in her employment with the Decatur County General Hospital Ms. Talley sustained an accidental injury to her back as the result of a fall occurring when the rollers on a chair in which she was sitting malfunctioned, causing her to fall to the floor. She alleged the injury she sustained was in the nature of a ruptured disc which necessitated continued medical treatment and resulted in permanent, total impairment and disability.

In reference to causation the trial judge found that plaintiff was injured as a result of a work-related accident. He found she had a pre-existing back condition at the time of her accident, and has since had two (2) back surgeries.[1] He further found that

1. The record indicates Mrs. Talley had experienced back problems since 1978 when she fell from a porch at home. She had two (2) prior

her pre-existing back condition was aggravated by her accident at work, she was no longer able to work in an open-labor market and was totally disabled due to her injury.

The accident suffered by Ms. Talley occurred on 3 January 1987. The scope of review in this Court on issues of fact is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e).

In *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987) this Court noted:

"This standard of review differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases. Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances. In the present case, however, some of the issues involve expert medical testimony. All of the medical proof was taken by deposition or was documentary, so that all impressions of weight and credibility must be drawn from the contents thereof, and not from the appearance of witnesses on oral testimony at trial."

The case before us is governed by the same rule. The only in-court evidence in respect to Ms. Talley's injuries came from her own testimony which added little beyond the circumstances surrounding her accident. She testified that after her 1984 laminectomy she had been able to work on a regular basis although she experienced "some back pain" prior to the fall she sustained on 3 January 1987. That incident caused the pain to increase to the point where she could not get relief. The pain was severe and her right leg was weak with numbness and a tingling in it. She did not report the incident when she fell because she was afraid she would be fired

and did not know that she was hurt as extensively as she was. She worked a 12–hour shift the following day, two (2) 12–hour shifts on the following week-end, and two (2) 12–hour shifts on the next succeeding week-end. On the 9th of January she contacted Dr. William G. Jennings and it was not until then did she realize she had a possible claim for workers' compensation. Her back pain persisted and grew steadily worse. Ultimately, through the offices of Dr. Jennings, she underwent a back fusion operation performed by Dr. Nicholas A. Ransom, on 16 February 1987. This operation was not entirely successful and at the time of trial on 9 August, 1988 she was still unable to work, do her housework, cooking, grocery shopping, etc. She could not walk without the assistance of a cane or a walker and since the surgery she had fallen and broken her right ankle.

Dr. Jennings' deposition testimony is revealing in that he began treating Ms. Talley for back related problems in 1985 or early 1986. His treatment began on a casual basis through their nurse and doctor relationship in the hospital. His records included a "patient's personal history dated 9–02–86." His diagnosis of her back problem at that time was unstable lumbar spine, spondylolisthesis and post-surgical pain syndrome. He was acquainted with the fact of her two (2) prior back operations for ruptured disc in 1979 and in 1984. He defined spondylolisthesis as a vertebral body sliding out of position, generally sliding forward on the vertebral body directly beneath it. The condition is graded into degrees 1 through 4, depending on the extent of movement. Sliding forward of the vertebral body pulls the tissues with it and pulls the nerves closing off the holes where the nerves go through. He had seen a great deal of spondylolisthesis [as a neurologist] because of the pain syndrome associated with it. In verbatim Dr. Jennings testified in pertinent part:

"I saw her on several occasions. I saw her more in the hospital than I saw her in my office. Sue was working, but was not really in good shape to be working

laminectomies one in early 1979 and the second in 1984.

and I had ... muscle relaxants and pain medication to keep her on the job. She was telling me that her husband was in construction work and was not working regularly and she had to work, when she worked, in pain. I sort of kept her in work with pain medication and muscle relaxants. I saw her on, at least, two occasions where she would come to me and tell me she almost slid down or something in the hospital and hurt her back more. That was one occasion. On another occasion, she came to me and she was hurting a great deal more. This was sometime in January, where she had sat down in one of the chairs and slid out of the chair. Unfortunately with her spondylolisthesis and back this aggravated this more and she was in more pain. ... I don't guess I should go on record saying this that I was kind of glad it happened because I was trying to get her to do something about her back and this sort of brought the pain to the front enough that I couldn't treat it. I was trying to get her off pain pills anyway and help her and this certainly gave me a little ammunition to try to get her to do something about her back. ... I had looked x-rays over on several occasions, earlier x-rays that I had gotten done and I knew she had a spondylolisthesis with the slippage and unstable back. Of course, a fall onto your buttock suddenly such as this is shocking enough, but when you have the spondylolisthesis and you're jarring the lower vertebral bodies up with the ones on top is sort of a shock to it. Naturally, the lines of force in the lumbar spine are forward and down anyway, and this just stretched the ligaments more. It would cause another pain, another extra pain syndrome. As far as any bony structural changes or anything of that nature, it may increase your spondlylolisthesis grade a little bit, shock your disc a little, but to me it was more of a related situation of, this is an increase in aggravation of the pain and maybe this is going to give me a chance to get something done. I just put her in a better brace and kept her working. She couldn't stop work. She was the breadwinner and she just could not stop work at that time. At least, that was the story she was giving me and I'm sure that's true. We had back braces trying to hold the slippage and so forth and I was trying at the time to get her into ... shortly, after that she started talking surgery. Started talking that she was going to have to give up and get something done. I was having some problems with getting her scheduled and so forth. She really didn't want to go and I was trying to kind of push her into it. Finally, all in all it took a number of months or weeks. I don't know what the dating schedule was but she was still hurting quite badly and I finally got her to consider going to New Orleans for evaluation and treatment. The particular surgery performed for her was fusion and bars. This surgery is to stabilize the back and the bars raise up the back, make it better positioned, pull it back and they fuse it. The bars or rods hold it in place until the fusion takes place and then they can take the bars out. They do that very successfully many times. Its very unfortunate that hers didn't work because normally they do."

Dr. Jennings further testified that based upon the history related to him concerning the accident at work it was his opinion that incident aggravated the pre-existing condition for which he had been treating Ms. Talley. He was further of the opinion that she was disabled at the time the deposition was taken on 10 March 1988. He estimated her permanent impairment rating on an anatomical basis to be 45 or 50% to the body as a whole and opined that there was no way she could compete on the labor market. On cross-examination he testified that Ms. Talley's spondylolisthesis was above grade 2. He prescribed pain medication for her to keep her functioning until surgery could be scheduled. It ultimately became apparent that she had an increasing dependency on the pain medication. Her back condition grew progressively worse beginning in late November of 1985 and sometime prior to 2 September 1986 it was evident that something must be done surgically. A spinal fusion became a posi-

tive option. She was severely impaired prior to January of 1987. The impairment rating set by him included her condition as it existed prior to January 1987 and the impairment she suffered as a result of the surgery in February of 1987. Prior to the operation he considered her impairment to be 15 to 20% of the total and the operation itself probably caused ten or twelve percent more. It was his opinion that Ms. Talley would have required the surgery whether or not she suffered the incident she related to him regarding the fall from the chair. After the alleged fall reported on 9 January 1987 she complained of additional pain and Dr. Jennings discovered no pathology of additional anatomic damage to her lower back.

Dr. Ransom, who performed the surgical procedure for Ms. Talley, testified that the nature of the operation was a lumbar spine arthrodesis procedure performed from the L–3 level to the sacrum which was three levels of fusion. The purpose of the procedure was to stabilize the spine in two abnormal post-surgery levels as well as the next disc level which was the L–3–4 levels which although not post-surgical did have evidence of disc degeneration. The medical history he obtained from Ms. Talley indicated she had a previous history of back pain and the injury of January 1987 apparently exacerbated her condition. He testified that he could not really state with any certainty how more unstable Ms. Talley's spine was rendered by her fall. His entire deposition related to the increase in the intensity of her pain resulting from the fall she suffered at Decatur Hospital.

Dr. Michael Cobb, an orthopedic surgeon, was employed by the defendant to make an examination and evaluation of Mrs. Talley and her condition. He testified that he compared x-rays taken in July 1984 with x-rays made in his office in 1988 and found no significant increase in the amount of slippage. The 1984 x-ray was focused on the area of spondylolisthesis and indicated she had a twenty-five percent (25%) slippage of the fifth lumbar vertebrae on the sacrum which he classified as a grade 2 spondylolisthesis. He expressed the opinion that the fall suffered by her did not

contribute to any further slippage as the x-rays did not show any significant increase. It was his further opinion that the fall occurring on 3 January 1987 was not the precipitating cause of the spinal fusion surgery performed on 16 February 1987. Based on Ms. Talley's medical history it was his view that her prior existing condition contributed to a chronic low back pain and a fall, such as the one described by her, could exacerbate this type of condition and any fall will aggravate back pain.

The plaintiff in a workers' compensation suit has the burden of proving every element of the case by a preponderance of the evidence. See *Tindall v. Waring Park Association*, 725 S.W.2d 935, 937 (Tenn. 1987). "This Court has consistently held that causation and permanency of a work-related injury must be shown in most cases by expert medical evidence. ... Although absolute certainty is not required for proof of causation, ... medical proof that the injury was caused in the course of the employee's work must not be speculative or so uncertain regarding the cause of the injury that attributing it to the plaintiff's employment would be an arbitrary determination or a mere possibility. ... If, upon undisputed proof, it is conjectural whether disability resulted from a cause operating within petitioner's employment, or a cause operating within employment, there can be no award." *Tindall v. Waring Park Association*, supra, p. 937, and cited cases.

If the findings of the trial judge are read to be that Ms. Talley had undergone two (2) back surgeries since the time of her accident, that, of course, is error. His finding that Dr. Jennings advised her she had aggravated her condition in the fall at work is not to be found in the record. A review of Dr. Jennings deposition in its entirety makes it clear that there was no permanent anatomical change in Ms. Talley's back as a result of her fall and any reference to an aggravation of her condition was an aggravation of her pain syndrome. The same is true with the testimony of Dr. Ransom whose strongest statement was that according to Ms. Talley's history there was continued pain after her disc incisions but

not as bad as she seemed to be after the injury. He could report nothing greater than a worsening of her symptoms after the trauma to her spine. There is nothing in the record to support the finding that Ms. Talley's disability was incurred as a result of her injury. To the contrary Dr. Jennings' testimony clearly shows that her lumbar spine was severely impaired prior to January of 1987. He stated unequivocally that after 9 January 1987 and prior to the February operation his records did not reflect any additional anatomic damage to her lower back.

██ We are of the opinion that Ms. Talley did sustain a compensable accident during the course and scope of her employment at Decatur County General Hospital on 3 January 1987. We also conclude that as a result she aggravated her pre-existing condition by making the pain worse but that the accident did not otherwise injure or advance the severity of that condition or result in any other disablement. See *Smith v. Smith's Transfer Corp.*, 735 S.W.2d 221, 225 (Tenn.1987). There is no doubt that pain is considered a disabling injury, compensable when occurring as the result of a work-related injury. *Boling v. Raytheon Company*, 448 S.W.2d 405, 407, 223 Tenn. 528 (1969). We concur with the trial court's finding that the notice to the employer was adequate under the circumstances of this case. Ms. Talley's testimony leaves no doubt she was aware she was required to give notice of an on-the-job injury. However until she was assured of the seriousness of her injury we consider her failure to give notice to be reasonable. *Brown Shoe Company v. Reed*, 350 S.W.2d 65, 70, 209 Tenn. 106 (1961). Since we find the notice to be adequate, whether or not the trial judge erred in denying the testimony of Wanda Maness, Supervisor of Nursing Service at Decatur Hospital, becomes nominal. If there was any error on the part of the trial judge in denying testimony relative to the reason for termination of Talley's employment, it did not affect the outcome of this case. However, under the evidence in the record, we cannot find that Ms. Talley's surgery and disability were causally connected to the injury she sus-

tained on 3 January 1987. She is the unfortunate victim of a disability which existed long before that date. According to Dr. Jennings she was only able to work prior to 3 January 1987 through administration of pain-relieving medication. The surgical procedures performed on her back were the result of that pre-existing disability and not the consequence of the fall she sustained.

In summary Ms. Talley is entitled to temporary total disability from the date of the termination of her employment with Decatur County Hospital until the date of the fusion operation on her spine. She is entitled to medical expenses incurred in the treatment of the injury sustained in her fall.

The judgment of the trial court is reversed insofar as it does not accord with the judgment of this Court. The case is remanded to determine the amount of compensation due in accordance herewith. Costs are adjudged against the defendant.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ.

## ORDER ON PETITION TO REHEAR

Plaintiff has filed a respectful petition to rehear questioning the Court's statement of the facts contained in the record, as well as our interpretation of prior decisions and principles of law in reference to the extent of the injury she sustained.

We have re-examined the medical evidence and the authorities submitted to us in support of the petition to rehear. We are satisfied that the conclusion reached by the Court is correct.

The petition to rehear is denied.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ.