Jerrold L. CUNNINGHAM,
Plaintiff/Appellant,

v.

The GOODYEAR TIRE & RUBBER
COMPANY, Defendant/Appellee.

Supreme Court of Tennessee,
at Jackson.

June 10, 1991.

Mark L. Hayes, Palmer, Hayes & Pope, Dyersburg, for plaintiff/appellant.

William B. Acree, Jr., Elam, Glasgow & Acree, Union City, for defendant/appellee.

## OPINION

O'BRIEN, Justice.

Plaintiff, Jerrold L. Cunningham, appeals from denial of worker's compensation benefits in the Obion Chancery Court. In dismissing the case the chancellor held that plaintiff did not suffer a compensable injury or accident while employed by defendant, Goodyear Tire and Rubber Company. The substantive issue for our consideration is whether the plaintiff may recover under the Worker's Compensation Statutes for the purported aggravation of a preexisting arthritic condition. We have thoroughly reviewed this record and now affirm the judgment of the trial court.

The trial judge found in pertinent part that plaintiff began his employment with the defendant on 14 May 1984. He was 56 years of age at that time. According to Mr. Cunningham's testimony he began to hurt from the first day of his employment and continued to get increasingly worse until he was forced to go to first aid at the plant and finally was seen by Drs. O.K. Smith and E.C. Thurman. He was referred by Dr. Thurman to Dr. Lowell Robison, a rheumatologist, on 5 September 1984. Dr. Robison testified that plaintiff had a two or three year history of known osteoarthritis, primarily involving his neck. Original tests made showed normal range of motion in plaintiff's joints, with complaints of pain at the extremes of motion of all joints. The diagnosis was generalized osteoarthritis which had been evident since either 1981 or 1982, and is a disease that develops over a long period of time. It was possible that Mr. Cunningham was having more pain before he went to work for Goodyear than he had related to the doctor. Dr. Robison further testified that he did not see Mr. Cunningham between 21 December 1984 and 6 March 1986. At that time two things were obvious, first that Mr. Cunningham had not been under treatment or medical supervision since his last visit, and second, this conflicted with the orders which had been directed for him.

The trial court further found that plaintiff's condition was due to a general arthritic condition predating his employment at Goodyear Tire and Rubber Company. Though his employment may have aggravated his preexisting condition, there was no connecting industrial injury or accident that might be considered the triggering incident producing an acceleration of his condition.

Citing authorities he held that one is not entitled to compensation when his work aggravates a preexisting condition by making the pain worse. A specific injury or accident is required before the aggravation of the preexisting condition is compensable. He denied compensation and dismissed the proceedings.

This claim originated prior to 1 July 1985, therefore the applicable standard of

review requires findings of fact shall be set aside only if there is no material evidence to support the judgment. *Alley v. Consolidated Coal Co.,* 699 S.W.2d 147, 148 (Tenn.1985). There is little or no disputed evidence in the record and we have no hesitancy in holding that the findings of fact made by the chancellor are supported by material evidence.

The record shows that plaintiff was employed by Goodyear on 14 May 1984 as the culmination of an age discrimination suit. He was 56 years old. He testified that he was hurting on the first day on the job because he was not accustomed to hard labor. He first reported to first aid on June 15th, 1984 and subsequently on June 25th and 30th, July 2nd and 19th, August 4th, 14th, 15th, 21st and 27th. His complaints, as reported by him, were pain in his hand, wrist, right shoulder and right hand. He did not complain to his employer of any specific injury or accident, nor did he testify as to any such event. He did not complain of any problems with his knees or feet. The only medical proof in the record is from Dr. Lowell Robison who first saw plaintiff on 5 September 1984. He reported to Dr. Robison for evaluation and treatment of his arthritis. He gave a history of known osteoarthritis involving primarily his neck. His work had been of a sedentary nature prior to employment with Goodyear and he had been essentially asymptomatic until then. He reported that after beginning with Goodyear he developed pain and limitation of motion with swelling in his shoulders, elbows, wrists, hands, knees, ankles and feet. Physical examination was normal. Predominant findings were in his joints where defuse periarticular tenderness was found throughout most of the peripherial joints. There was no evidence of objective joint swelling or heat on this examination nor was there any effusive type swelling. Whether or not there may have been some soft tissue swelling was uncertain. There was a normal range of motion but Mr. Cunningham complained of pain at the extremes of motion in all of his joints. Dr.

Robison diagnosed Mr. Cunningham's condition to be generalized osteoarthritis, which is a form of arthritis, the cause of which is unknown, but is manifest primarily by a deterioration of the cartilages in the joints to the extent that the cartilages lose their ability to properly cushion or pad the joints. This kind of arthritis is sometime referred to as wear and tear arthritis because of the fact that people who continue to subject these joints to excessive physical activity experience a greater degree of wear and tear on the joints than they do if they are less strenuous with their joints.

It is the insistence of the plaintiff that his osteoarthritic condition was aggravated by his employment and by virtue of this aggravation he is entitled to compensation. He has cited a large number of cases to sustain his position. Unfortunately, the majority of the cases cited, with few exceptions, state in one fashion or another, that when an employee with a disabling injury or disease not related to employment suffers an aggravation to the disabling injury or disease by making the pain worse, the situation does not constitute an accident as the word is used in the compensation statutes. The few exceptions in the cases cited by plaintiff are totally contrary to his contention.

In this case the appellant has suffered for several years from a progressive type of arthritis. This condition being progressive in nature, would subject him to increasing pain and disability whether he worked or not. The theory of the complaint was that the conditions of his employment accelerated or aggravated his preexisting arthritic condition. It is conceded that the disease from which appellant suffers did not have its origin in his employment, nor is it an occupational disease. Where the employment does not cause an actual progression or aggravation of the underlying disease, but simply produces additional pain, there is substantial authority that a claim is not compensable when the disease itself was not an occupational disease but originated in conditions outside the employment.

Among the seminal cases involving the issue before us is *Boling v. Raytheon Co.*, 223 Tenn. 528, 448 S.W.2d 405 (1969), in which the Court said:

> "In substance, what we have here is an employee with a disabling injury or disease not related to employment, but the employment does aggravate the disabling injury or disease by making the pain worse. This situation does not constitute an 'accident' as this word is used in our workmen's compensation statutes."

In *Smith v. Smith's Transfer Corp.*, 735 S.W.2d 221 (Tenn.1987), the employee suffered from a progressive condition diagnosed as "thoracic outlet syndrome," exacerbated by activity involving the use of her hands above the waist level. After extensive medical treatment and various surgical procedures a compensation suit was initiated. The trial court granted compensation. This Court reversed, finding there was no evidence that plaintiff's complaint had its origin in anything connected to her employment.

In the instant case, as in *Smith*, supra, Mr. Cunningham's work for Goodyear aggravated his preexisting condition by making the pain worse but it did not otherwise injure or advance the severity of his osteoarthritis. Plaintiff did not sustain an injury by accident within the meaning of the Worker's Compensation Act and is not entitled to compensation, therefore the extent of his disability and the employer's liability for future medical care is pretermitted.

The judgment of the trial court is affirmed and plaintiff's suit is dismissed. Costs are adjudged against the appellant.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, J., dissents and files opinion.

DAUGHTREY, Justice dissenting.

Given the fact that review of this case is controlled by the material evidence standard, one would expect the chances of reversing the chancellor's decree on the facts to be slim indeed. However, inspection of the judgment indicates that it is based upon a mistake of law and should be reversed for this reason.

The chancellor held that "[o]ne is not entitled to compensation when his work aggravates a pre-existing condition by making the pain worse," citing *Smith v. Smith Transfer Corp.*, 735 S.W.2d 221 (Tenn.1987), as controlling authority. Indeed, *Smith Transfer* does support this statement of law, as far as it goes. But, in point of fact, the chancellor's version includes only half the rule, which, as set out in *Smith Transfer*, is as follows:

> In the instant case, Mrs. Smith's work for defendant aggravated her pre-existing condition by making the pain worse *but it did not otherwise injure or advance the severity* of her thoracic outlet syndrome *or result in any other disabling condition.* Thus, we find plaintiff did not sustain an injury by accident within the meaning of the Worker's Compensation Act while employed by defendant.

*Id.* at 225–26 (emphasis added). Implicit in this holding is the following rule: If the work aggravates a pre-existing condition not merely by increasing the pain, but by "advancing the severity" of the condition, or if it results in a disabling condition other than increased pain, the worker has suffered a compensable injury under the compensation statutes.

Obviously, in applying only the first half of the holding in *Smith Transfer*, the chancellor applied the wrong rule and thus committed a mistake of law. Measuring the proof in this record against the rule as correctly stated, it is clear that the plaintiff should have received benefits for permanent disability. The evidence establishes undisputably that Jerrold Cunningham did not suffer merely an increase in pain as the result of his aggravated condition of osteoarthritis, but that his pre-existing condition was "advanced in its severity" as the result of his work-related injury.

The existence of Cunningham's arthritis was first noted, as the majority opinion indicates, in 1981. At that time, Cunningham was involved in a car accident and sought medical treatment for a neck injury. The doctor who treated him told Cunningham that there were indications of arthritis in his neck.

Cunningham was, nevertheless, asymptomatic from the time the arthritis was diagnosed until he was given the opportunity to go to work at Goodyear.[1] In fact, before Cunningham was allowed to start work at Goodyear, he was given a medical examination. He was also subjected to a test of his physical ability to do the heavy labor involved, which included continuous lifting of weights from 100–150 pounds, as well as carrying, loading, bending and twisting while lifting heavy materials. Cunningham passed the medical and physical tests and went to work at Goodyear in May 1984.

Within a month, he developed severe pain in his wrists and arms. The condition became generalized and spread to his shoulders and back, and then to his hips, knees, ankles, and feet. By the time the case came to trial in 1990, Cunningham was completely physically disabled and could get around only with the aid of a walker. He was otherwise reduced to use of a wheelchair.

Cunningham's rheumatologist, Dr. Robison, was the only expert produced by either side. He recounted the plaintiff's medical history, diagnosed his condition as osteoarthritis, and concluded that "the strenuous nature of [Cunningham's] physical activity [at his job at the Goodyear plant] would indeed have aggravated the arthritis" that was first noticed two or three years earlier.

Dr. Robison described osteoarthritis as "a form of arthritis, the cause of which is unknown, but is manifested primarily by a deterioration of the cartilages in the joints to the extent that the cartilages lose their ability to properly cushion or pad the joint ..." He noted that "people who continue to subject these joints to excessive physical activity experience a greater degree of wear and tear on the joints than they do if they are less strenuous with their joints." The first symptom may be pain, but it is followed by inflammation that can be objectively confirmed, and ultimately by loss of motion. The physical changes caused by advancing osteoarthritis can be documented by x-ray.

When Dr. Robison first examined the plaintiff in September 1984, he made the following findings:

> ... I found diffuse periarticular tenderness throughout most of the peripheral joints. I couldn't find any evidence of objective joint swelling or heat at that particular time. There wasn't any effusive type swelling, but I couldn't be sure whether or not there may have been some soft tissue swelling. The joints had normal range of motion, but he did complain of pain at the extremes of motion in all of his joints. His knees and ankles did seem to be exceptionally tender ...

Robison prescribed Motrin, an anti-inflammatory drug, for Cunningham and advised him to return to his regular doctor.

The plaintiff continued to work until the first week in September, but his condition soon worsened, and he returned to Dr. Robison in October and again in December 1984. At the time of Cunningham's third visit, the rheumatologist made the following "objective findings":

1. The chancellor's "finding" that "it was possible that he was having more pain before he went to work for Goodyear than he told [his rheumatologist] about" is totally unsupported by the record. The only *reference to such a possibility* came in response to a question by the employer's attorney in one of the three depositions of the rheumatologist, Dr. Lowell B. Robison. The lawyer asked if it were possible that Cunningham had suffered more pain than he later reported, and the expert gave the only reasonable response he could give under the circumstances—*he agreed that it might be possible.* His answer was purely speculative and cannot reasonably support a finding by the trial court one way or the other.

[There was] tenderness over the joints, but most striking were changes on the x-rays, which revealed the typical joint space narrowing and some hypertrophic osteoarthritis changes in the left knee and in the hands. I also found some periarticular osteoporosis in the interphalangeal joints—that's the joints between the finger bones in the hand.

Dr. Robison testified that from this point on, he discouraged Cunningham from doing any work on a regular basis that involved heavy lifting, bending, or stooping. He thought it might be possible to rehabilitate Cunningham through medical and physical therapy, to allow him to do "some type of sedentary employment, assuming that he had the educational and intellectual skills to pursue that type of employment." But, he continued, "the x-rays suggest[ed] that he need[ed] to restrict weight-bearing and especially weight-bearing with the knees." In summary, Dr. Robison concluded at the time of his first deposition that Cunningham had "the generalized form of the disease [of osteoarthritis] and that he has experienced aggravation of the disease in the joints that have been stressed excessively ... primarily his weight-bearing joints, [the] hips, knees, ankles and feet, although he has experienced symptoms in his neck and shoulders and elbows as well."

Asked if the changes would be permanent, Dr. Robison replied:

In general, most people with osteoarthritis experience a very gradual worsening of the condition over time, but the progression is not very rapid and not very extensive *unless they abuse the joints* (emphasis added).

He was later asked to describe the kind of "abuse" that would cause aggravation of the condition or its rapid acceleration, and he identified the main culprit as "heavy lifting." He further defined heavy lifting as "anything over about 40 or 50 pounds."

The acceleration of Cunningham's osteoarthritis continued past his termination from employment in February 1985 (that action by Goodyear was based on a medical statement indicating that Cunningham was too physically disabled to do any of the jobs available at the plant). In a second deposition taken in October 1986, Dr. Robison described his latest findings as follows:

The x-rays of the right knee and the feet revealed significant progression of his osteoarthritis with almost complete loss of the cartilage space on the medial aspect of his [right] knee ... [a]nd generalized involvement of the MTP joints of both feet ... It was my opinion as a result of this examination that the patient's disease had progressed significantly since my last encounter with him and that his degree of [anatomical] disability had overall reached approximately 90%, primarily due to his inability to [walk] as a result of his joint disease in his weight-bearing joints.

In addition, Dr. Robison concluded that Cunningham needed "at least one total knee replacement, and that's as of seven months ago, and it may be more than that by now." Again, he testified that at least some degree of the aggravation of this condition was the result of his patient's employment at Goodyear.

In his third and final deposition, taken by counsel for the employer, Dr. Robison again described the general condition of osteoarthritis as entailing the degeneration of cartilage, so that "as a result the patient develops then a secondary inflammatory condition in the joint resulting in pain, swelling, heat, tenderness, and ultimately loss of motion." He reiterated that the period of time that it takes for one to develop osteoarthritis is "highly variable" and added:

In normal and uncomplicated osteoarthritis, generally [it will take] many, many years [to develop]. However, the presence of unusual stress on the joint, such as abuse to the joint or an injury to the joint, it can be accelerated and develop quickly *in a matter of a few months or a year* (emphasis added).

The medical expert also reiterated that while Cunningham's employment would not cause osteoarthritis, it could aggravate development of the condition.

When Jerrold Cunningham went to work for Goodyear in May 1984, he was a 56–year–old man whose previous employment had been largely sedentary in nature. Although he had been injured in a car accident in 1981, at which time his physician noted some arthritis in his neck, Cunningham had remained symptom-free in the meantime. Most significantly, he was able to pass the employer's medical and physical tests just prior to his May 1984 employment. Within a month or so, after steady lifting and carrying of weights in excess of 100 pounds, he began to experience greatly accelerated symptoms of osteoarthritis. By the time he saw Dr. Robison in October 1984, he was in the throes of a rapidly progressing disease that would ultimately leave him virtually unable to walk and, clearly, totally and permanently disabled from seeking gainful employment. There is simply no way to conclude that this man was suffering from merely "an increase in pain."

Tennessee law has long provided that the employer must bear the risk of aggravation of an employee's pre-existing condition:

> "The rule then in Tennessee is that an employer takes an employee as he finds him. He is liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise would have been the case."

*Baxter v. Smith,* 211 Tenn. 347, 364 S.W.2d 936, 942–943 (1961), quoted in *Glove Co. v. Hughes,* 223 Tenn. 37, 442 S.W.2d 253, 255 (1969). Our law likewise recognizes that a worker may sustain a compensable "gradual" injury as the result of continual exposure to the conditions of employment. *See generally Central Motor Express v. Burney,* 214 Tenn. 118, 377 S.W.2d 947 (1964), and cases cited therein.

None of these points of law, nor their relevance to the circumstances of this case, appears to be at issue on appeal. The dispositive legal question is whether the worker can be deprived of compensation on the theory that he has suffered merely an increase in pain, which would not be compensable under the first part of the rule in *Smith Transfer, supra.* The record clearly establishes, however, that the plaintiff has become the victim of virtually complete physical debilitation, as the result of osteoarthritis aggravated by the conditions of his employment at Goodyear. In the words of *Smith Transfer,* the evidence demonstrates that the plaintiff's employment "advanced the severity" of his condition and that it resulted in a disabling condition other than pain alone. It was this part of the formula that the court below erroneously failed to apply.

The "material evidence" rule requires us to give appropriate deference to factual conclusions reached by the trial court. It does not require us to overlook a mistake of law. In this case, had the trial court applied the correct rule, the evidence would have compelled a completely different conclusion.

I would reverse the judgment and remand the case for an award of permanent disability in the plaintiff's favor.