Keith E. TOWNSEND, Claimant–Appellant,

v.

STATE of Tennessee, Defendant–Appellee.

Supreme Court of Tennessee, at Knoxville.

Feb. 24, 1992.

F. Chris Cawood, Kingston, for claimant-appellant.

Charles W. Burson, Atty. Gen. & Reporter, John Knox Walkup, Sol. Gen., Brenda Rhoton Little, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

ANDERSON, Justice.

In this worker's compensation action against the State of Tennessee, the Claims Commissioner dismissed the plaintiff's claim, on the grounds that the aggravation of his pre-existing knee injury was not an injury by accident arising out of and in the course of his employment. The Commissioner also held that the plaintiff did not

give proper notice of his injury, as required by Tenn.Code Ann. § 50–6–201, and that he failed to obtain approval from his employer before seeking medical treatment.

We need not determine the issues of notice and authorized medical treatment, since the evidence does not preponderate against the Commissioner's holding that the aggravation of plaintiff's pre-existing injury was not an injury by accident arising out of and in the course of his employment. Accordingly, we affirm the Commissioner's judgment.

## FACTUAL BACKGROUND

The plaintiff, Keith E. Townsend, age 24, was first employed by the Tennessee Department of Corrections at the Morgan County Regional Center in June of 1986. The plaintiff worked as a long-line correctional officer from October 1986 until the present time. As a long-line officer, he was responsible, along with other security personnel, for taking groups of inmates from inside the institution to work areas around the correctional system farm. His job responsibilities required him to walk over gravel, grass, and uneven terrain.

In September of 1984, before his state employment, the plaintiff seriously injured his right knee in a motorcyle accident. Total reconstructive knee surgery was performed by Dr. Gilbert Pratt, who died a short time later. The plaintiff was thereafter treated by Dr. McDonald Burkhart, an orthopedic surgeon. Dr. Burkhart removed his cast, fitted him for a Lennox Hill brace, and then provided follow-up care until June 12, 1985. When Dr. Burkhart last saw him, the reconstructed ligament was still loose and the knee was unstable because he had no anterior cruciate ligament.

When the plaintiff began working for the Department of Corrections in 1986, his supervisor was well aware that he had suffered a previous knee injury and often asked about his knee and whether he was having problems. The plaintiff's response was always that there were no problems with his knee. He also advised his supervisor that walking was better for his knee, and that his doctor had advised him that it was therapeutic for him to walk. If he had problems, the plaintiff understood he could have requested to be reassigned to a position that did not require working on the long line, but he never made such a request.

On February 5, 1988, the plaintiff returned to Dr. Burkhart for the first time since 1985 and advised the doctor that he had developed pain in his knee two months before, after running, and that his knee had become much worse. Specifically, the doctor's attending physician's report read:

> Patient developed pain after running approximately two months prior 2/5/88. Old history of surgery 1984 and problems off and on since.

Dr. Burkhart diagnosed the plaintiff as having an unstable knee, secondary to anterior cruciate ligament loss. Dr. Burkhart explained that the plaintiff's surgery in 1984 had left the ligament loose and that over a period of time it had gradually become looser and stretched out, and that plaintiff's degenerative arthritis had developed and progressed because of the unstable knee.

Dr. Burkhart recommended and performed surgery in early March of 1988, which consisted of a reconstruction of the ligament, as well as the removal of a torn cartilage and shaving of the kneecap because of arthritic changes. The plaintiff was fitted with a brace and kept off work until August 1, 1988. He was told to use his brace "only during times he was engaged in sporting activities, such as ball playing, basketball, softball, running, football, or something that involved a lot of strain on his knee." He was released to return to the same job with no restrictions; his activity to be guided by common sense and the amount of discomfort. He was still working at the same job at the time of trial.

Dr. Burkhart felt that the plaintiff had a 20 percent permanent physical impairment to his lower extremity, but was unable to assess what part of that disability would have been due to the 1984 knee reconstruction surgery.

The plaintiff reported to his supervisor the day after his visit with Dr. Burkhart on February 5, 1988, that there was some damage to his knee, that the doctor wanted to perform surgery, and that it was repair work from the previous 1984 knee injury and surgery. The plaintiff did not tell his supervisor that he had a work-related injury, and continued to work until the date of his surgery in the first week of March, 1988. On April 4, 1988, the plaintiff wrote a letter requesting special leave from work because his accumulated leave time had expired, and at that time did not report that his injury was work-related.

Finally, on June 1, 1988, the plaintiff went to the Department of Corrections personnel department and filed a claim that his injury was work-related. On the next day, June 2, 1988, he advised his supervisor of the claim.

Dr. Burkhart testified at trial that the plaintiff questioned him concerning the possibility of work aggravation of his condition in May or June of 1988, and that based on the history given, it was his opinion that work had aggravated the plaintiff's pre-existing problem. Dr. Burkhart said that he was told by the plaintiff at the time of the surgery that his occupation required quite a bit of walking and being on his feet. Dr. Burkhart was not asked, nor did he testify, whether the work-induced aggravation was simply increased pain or whether it advanced the severity of the condition or caused a disabling condition.

In contrast to what he told his supervisor, the plaintiff testified at trial that ever since his 1984 surgery he has had problems with his knee, including the period of 15 months prior to his employment with the Department of Corrections. He said it got much worse in the months before February of 1988. During that period, his knee would hurt and swell, and he knew something was wrong. According to the plaintiff, there was no particular accident or incident immediately before the knee began to worsen, and *he at no time associated his knee injury with his employment.*

Based on the foregoing evidence, at trial the Commissioner found:

Furthermore, the chief complaint of Mr. Townsend to his physician prior to the second surgery was increased discomfort related to a running incident. After a review of that portion of the record which pertains to this running incident, the Commission concludes that it was most likely recreational and unrelated to employment.

The Commissioner then concluded there was no compensable injury by accident and that the claim should be dismissed.

█ Our review of findings of fact by the Commissioner is *de novo* upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2); *Lollar v. Wal–Mart Stores, Inc.,* 767 S.W.2d 143 (Tenn.1989).

The plaintiff contends that because Dr. McDonald Burkhart testified that based on history the plaintiff's work aggravated the pre-existing injury, the Commissioner erred in determining that claimant's injury was not caused by an accident arising out of employment. We disagree, because the determinative question is not whether there was aggravation but the nature of the aggravation.

█ This Court made it clear in *Smith v. Smith's Transfer Corp.,* 735 S.W.2d 221 (Tenn.1987), that there is no injury by accident where work aggravates a pre-existing condition merely by increasing the pain. However, if the severity of the condition is advanced, or if it results in a disabling condition other than increased pain, the worker has suffered a compensable injury. *See Cunningham v. Goodyear Tire & Rubber Co.,* 811 S.W.2d 888, 891 (Tenn. 1991); *Boling v. Raytheon Co.,* 223 Tenn. 528, 448 S.W.2d 405 (1969).

Our review of the record reflects that the plaintiff had pain in his knee beginning at the time of the surgical reconstruction of his knee in early 1984, before he was employed by the Department of Corrections. Thereafter, he had pain off and on, but at about the same degree until the running

activity, approximately two months before February of 1988, at which time the knee became substantially worse. The plaintiff consistently reported before he had the second surgery that his work did not aggravate his knee. Clearly, he should recognize it if symptoms increased during or after work.

The medical proof demonstrated that what occurred was independently progressive; that the reconstructed ligament in the knee was loose after the 1984 surgery and continued to get looser; that the knee continued to get more unstable; and that the instability caused the degenerative arthritis to develop and progress. Dr. Burkhart testified without elaboration that the plaintiff's work aggravated his pre-existing condition, based on the history furnished. Dr. Burkhart did not testify that plaintiff's work advanced the severity of the pre-existing condition or caused a disabling condition. Moreover, the chief complaint initially reported to the doctor was the development of pain two months before, after running.

Implicit in the Commissioner's finding that the knee aggravation was unrelated to employment, was a consideration of the credibility of the plaintiff with regard to reporting his symptoms and how they related to his work. The plaintiff gave different versions of his symptoms as related to his work to his supervisor, his doctor, at his discovery deposition, and at trial. "Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances." *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315 (Tenn.1987). *See also Landers v. Fireman's Fund Ins. Co.,* 775 S.W.2d 355, 356 (Tenn.1989). We conclude that plaintiff's work did not advance the severity of the condition or cause a disabling condition. Accordingly, plaintiff did not sustain an injury by accident within the meaning of the Workers' Compensation Law when employed by the defendant.

Having made this decision, we need not determine the issues of notice and medical expenses, and accordingly affirm the Commissioner's judgment of dismissal. Costs of this appeal are taxed to the plaintiff.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.