**Joey SWEAT, Plaintiff/Appellee,**

v.

**SUPERIOR INDUSTRIES, INC.,
Defendant/Appellant.**

Supreme Court of Tennessee,
Workers' Compensation Appeals Panel,
at Knoxville.

March 3, 1998.

Steven H. Trent, Baker, Donelson, Bearman & Caldwell, Johnson City, for Defendant/Appellant.

Howell H. Sherrod, Jr., Sherrod, Stanley, Lincoln & Goldstein, Johnson City, for Plaintiff/Appellee.

## *MEMORANDUM OPINION*

WILLIAM H. INMAN, Senior Judge.

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with T.C.A. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law.

### I

This is a psoriatic arthritis [1] case, an ongoing debilitating condition, which pre-existed the plaintiff's employment. He alleges that he was asymptomatic prior to his em-

---

1. A connective tissue arthritis, not curable, and highly debilitating.

ployment by the defendant and that the nature of his job triggered his symptoms and worsened the underlying disease. The defendant says that only the symptoms, i.e., pain and swelling, were exacerbated by employment (as any physical activity would do) but that the disease *per se* was not worsened.

Dr. David Lurie testified by deposition. The precise issue of whether the plaintiff's employment caused a progression of the disease or whether it merely aggravated the symptoms was not sufficiently articulated by Dr. Lurie in the opinion of the trial judge, and he requested that Dr. Lurie elucidate the point either by a supplemental deposition or by letter. Counsel agreed to the latter. He was asked: In your opinion, based on a reasonable medical probability, did Sweat's activities ... advance and result in an actual progression of his underlying psoriatic arthritis? To which Dr. Lurie responded: "In my opinion, based on reasonable medical probability Sweat's work ... advanced and resulted in actual progression of his underlying psoriatic arthritis." He testified that the allocation of the progression of the disease from physical activity as contrasted to spontaneous progression was not quantifiable, but that the "repetitive, strenuous, weight-bearing activities resulted in some permanent joint injury."

## II

The plaintiff is 28 years old, with a high school education. He held a variety of jobs before he was employed by the defendant in 1993. He worked in the foundry transporting liquid aluminum by a monorail system. This kind of job required safety clothing and paraphernalia. In 1994 he had a shoulder injury which apparently required no treatment. Pain and swelling developed in his ankles, hip and shoulder, which eventually disabled him.

He was employed by the defendant 18 months. Before working there, he never experienced any of the symptoms of psoriatic arthritis. Within a few months, his feet became sore; the condition worsened, until most of his body was affected. Psoriatic arthritis was eventually diagnosed by a rheu-

matologist, Dr. Lurie, whose opinion we have alluded to.

Dr. John Marshall, a physiatrist, evaluated the plaintiff. He made four different diagnoses of the plaintiff, one of which was psoriatic arthritis, of unknown etiology. He opined that the plaintiff's job activities were not related to his condition.

The trial judge found that the disease was not job-related, and probably pre-existed his employment, but he was unable to "make the required distinction ... of whether plaintiff's employment caused a progression or worsening of the ... underlying disease or merely aggravated his symptoms," and suggested clarifying testimony, as we have seen. Fully accrediting Dr. Lurie's opinion, the trial judge found that the nature of the plaintiff's work *"caused a progression or actual worsening of his underlying psoriatic arthritis,"* and awarded benefits based on a finding of 70 percent permanent, partial disability.

Our review of the findings of fact made by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e)(2). *Stone v. City of McMinnville,* 896 S.W.2d 548, 550 (Tenn.1995).

The issue for review is "whether the trial court erred in finding that the plaintiff sustained a compensable injury as defined by the Tennessee Workers' Compensation Law."

We adopt the findings and analyses of the trial judge:

 "The general rule is that aggravation of a pre-existing condition may be compensable under the workers' compensation laws of Tennessee, but it is not compensable if it results only in increased pain or other symptoms caused by the underlying condition. *See Cunningham v. Goodyear,* 811 S.W.2d 888, 890 (Tenn.1991); *Smith v. Smith's Transfer Corp.,* 735 S.W.2d 221, 225–226 (Tenn.1987); *Boling v. Raytheon Co.,* 223 Tenn. 528, 448 S.W.2d 405, 408 (1969); *Conner v. Rite Aid,* 1995 WL 274486, 1995 Lexis 220 (W.Comp. Appeals Panel). It has been otherwise stated that, to be compensable, the pre-existing condition must be "advanced"

(*Springfield v. Eden,* 1995 WL 595602), 1995 Lexis 67 (W.Comp. Appeals Panel), or there must be an "anatomical change" in the pre-existing condition (*Talley v. Virginia Ins. Reciprocal,* 775 S.W.2d 587, 591 (Tenn.1989)), or the employment must cause "an actual progression . . . of the underlying disease." *Cunningham, supra* at 890.

In *Boling,* plaintiff worked for defendant some nine years when she started having pain in her neck, back and shoulder. She was ultimately diagnosed with degenerative arthritis. The Supreme Court, denying recovery, said:

> In substance, what we have here is an employee with a disabling injury or disease not related to employment, but the employment does aggravate the disabling injury or disease by making the pain worse. This situation does not constitute an 'accident' as this word is used in our workmen's compensation statutes. *Boling, supra* at 408.

*Smith* involved an employee with the disease of thoracic outlet syndrome. She testified that she never had any health problems while working for several employers for the 12 years preceding her employment with defendant. Her pain started some five months after starting work for the defendant. The Court, assuming plaintiff had been asymptomatic up until that time, stated:

> [T]here is no evidence whatever that [the disease] had its origin in any thing connected to plaintiff's work for defendant.
>
> . . . . .
>
> It is also undisputed that plaintiff suffered the same pain associated with thoracic outlet syndrome when engaged in non-work related activities. There was no medical evidence that plaintiff's keyboard activity or bill of lading grasping produced any physical change or advanced the incidence of thoracic outlet syndrome other than increased pain. *Smith, supra* at 224.

The plaintiff in *Cunningham* had osteoarthritis, but had been asymptomatic until he started working for Goodyear. He soon developed pain in his shoulders and all extremities along with limitation of motion. The Supreme Court found that there was no "ac-cident" where the employment did not cause the underlying disease, but aggravated the disease by making the pain worse. *Cunningham, supra* at 890. It is significant to note Justice Daughtrey's dissent, in which she found that plaintiff's work had "advanced the severity" of his condition and "resulted in a disabling condition other than pain alone" based largely on the fact that he was asymptomatic when he first went to work for Goodyear. *Cunningham, supra* at 894. The majority of the Court, however, clearly followed previous decisions, saying:

> . . . Where the employment does not cause an actual progression or aggravation of the underlying disease, but simply produces additional pain, there is substantial authority that a claim is not compensable when the disease itself was not an occupational disease but originated in conditions outside employment. *Cunningham, supra* at 890.

██ It is well-settled that an employer takes an employee as he finds him, that is, with his pre-existing defects and diseases. *Rogers v. Shaw,* 813 S.W.2d 397 (Tenn.1991).

██ In light of the apparent state of the law, the Court posed the following question to Dr. Lurie in the agreed-upon letter:

> In your opinion, based on a reasonable medical probability, did Sweat's work activities at Superior Industries "advance" and result in "an actual progression" of his underlying psoriatic arthritis?

Dr. Lurie's answer was: "In my opinion, based on reasonable medical probability that Sweat's work activities at Superior Industries advanced and resulted in actual progression of his underlying psoriatic arthritis." He stated further, the allocation of how much his disease progressed from work-related activity as opposed to spontaneous progression was not quantifiable, but the "repetitive, strenuous weight-bearing activities . . . resulted in more permanent joint injury."

Dr. Marshall, the physiatrist who saw plaintiff only once and for evaluation, not treatment, apparently disagreed with Dr. Lurie. Depos. of Dr. Marshall, pp. 56–58. However, the Court finds Dr. Lurie's opinion to be more persuasive. He is a specialist in this field and was, and is, plaintiff's treating

physician. *See Davis v. Van Liner Ins. Co.,* 1995 WL 381730, Tenn. Lexis 333 (W.Comp. Appeals Panel).

■ What we do know from the undisputed testimony is that plaintiff was asymptomatic prior to working for defendant notwithstanding being very active, even lifting weights and running. Plaintiff's employment "triggered" his symptoms. There being no way by which the Court can quantify how much worse his condition was made by his work, it results that the employer must bear the burden of any uncertainty.

The Court found plaintiff to be a very credible witness in all respects. Further, as indicated by the testimony of Dr. Hankins, plaintiff is quite intelligent and capable of doing well in college and in many fields of employment upon receiving the necessary education and training. His employment will have to be, in general, sedentary, however. Clearly, plaintiff is not limited to the kinds of unskilled employment that he had in the past.

### Holding:

The Court **FINDS** and **HOLDS** that plaintiff did suffer a compensable injury in the course and scope of his employment with defendant. Specifically, the prolonged standing on a concrete floor and at times strenuous nature of his work caused a progression or actual worsening of his underlying disease of psoriatic arthritis. As a result thereof, plaintiff has sustained a permanent partial disability of seventy (70) percent to his whole body.

We are unable to find that the evidence preponderates against the judgment, which is affirmed at the costs of the appellant. The case is remanded for all purposes.

DROWOTA, J., and JOE C. LOSER, Jr., Special Judge, concur.