IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS FEBRUARY 24, 2004

STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v.
SANDRA LILLY
IN THE MATTER OF: K.M. , DOB 7/6/88, A CHILD UNDER EIGHTEEN
YEARS OF AGE

Direct Appeal from the Juvenile Court for Lauderdale County
No. J3-1260      Rachel Anthony, Judge

No. W2003-02156-COA-R3-PT - Filed April 30, 2004

This case arises from the termination of parental rights of Mother and Father. Only Mother has appealed the decision of the trial court, terminating her parental rights on the grounds that (1) she abandoned Child by failing to visit, (2) she abandoned Child by failing to provide more than token support, and (3) the conditions which led to Child's removal still persist. Mother appeals arguing that the State of Tennessee Department of Children's Services failed to carry its burden of proof for these grounds. In addition, Mother argues that the Department of Children's Services failed to prove that such termination of parental rights is in the best interest of Child. Finally, Mother argues the trial court committed prejudicial error when it allowed the rebuttal testimony of a witness in violation of the sequestration rule. For the following reasons, we affirm the decision of the trial court.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Reneé M. Creasy, Dyersburg, TN, for Appellant

Paul G. Summers, Attorney General & Reporter, Elizabeth C. Driver, Assistant Attorney General, Nashville, TN, for Appellee

## OPINION

## Facts and Procedural History

Sandra Lilly ("Mother") and Monroe Murphy ("Father") are the parents of K.M. ("Child"), who was born on July 9, 1988. Mother held custody of Child and her and Father's other two minor children until January 22, 1997, when the Tennessee Department of Children's Services ("DCS") removed all three children due to Mother's deplorable living conditions and placed all three children in DCS's custody. Though the other two minor children were returned to Mother thereafter, DCS, in December 1997, filed a petition alleging dependency and neglect of Child, citing issues of continued hygiene problems and difficulty reaching Mother when Child was sick. Child was placed in DCS's custody and, due to Child's condition of being "profoundly retarded," DCS placed Child in a medically fragile foster home in February 1998 under the care of Tonya Honeycutt ("Honeycutt"), a foster parent with training in first aid, CPR, and special training specific to Child's disability.

Child remained in Honeycutt's care; at the time of trial, this was a period of almost five years. In the year before the termination hearing in May 2003, Mother visited Child on three documented occasions, being July 24, 2002, March 15 and May 10, 2003. Mother testified she must travel approximately two hours in order to reach Honeycutt's home. She and her husband, Danny Lilly, Child's stepfather, own two pickup trucks and Mother's and Father's two other children reside with them. Danny Lilly is unemployed due to an injury at his job, and Mother had been working for Head Start for a year at the time of trial, earning $6.50 per hour for approximately thirty hours per week. Although Mother testified that visiting Child required herself, her husband, and her two children to travel in both pickup trucks and was expensive, she admitted that she never requested DCS assist her in any way.

Since Child has been in Honeycutt's care, her conduct and conditions have improved. She can now put on her socks by herself, indicate what she wants or needs by using forms of sign language, no longer has head lice, and does not handle her feces. It was undisputed at trial that Child is in a loving relationship with Mother and Honeycutt. However, Mother has paid no child support for Child. Mother did testify that she offered money to Honeycutt one time, but it was refused. In addition, at one point, Mother has given Honeycutt some clothes, blankets, and toys for Child.

Since Child was removed, Mother and her husband have moved into a different home. Both testified that the house was clean; however, when the DCS caseworker went to the house to inspect the home, she was refused entry on every occasion but one on April 4, 2003, just over one month before the hearing on DCS's petition to terminate parental rights. At this visit on April 4, the DCS caseworker testified the home was clean, but she was only allowed access to the living room of the home and did not have a chance to examine the bedrooms because Mother's dogs were penned up there.

On January 6, 2003, DCS filed a petition to terminate the parental rights of Mother and Father to Child. Subsequently, on March 14, 2003, Mother filed an answer to DCS's petition and a petition to return custody of Child to her. A hearing on the petitions was held on May 22, 2003, and, after hearing each party's proof, the trial court terminated the parental rights of Mother and Father to Child. Mother appealed to this Court and raises the following issues for our review:

I. Whether the trial court erred when it found DCS proved, by clear and convincing evidence, that Mother abandoned Child by willfully failing to visit for a period of four consecutive months prior to the filing of DCS's petition to terminate parental rights;

II. Whether the trial court erred when it found DCS proved, by clear and convincing evidence, that Mother abandoned Child by willfully failing to provide support for a period of four consecutive months prior to the filing of DCS's petition to terminate parental rights;

III. Whether the trial court erred when it found DCS proved, by clear and convincing evidence, that the conditions which led to Child's removal continued to persist;

IV. Whether the trial court erred when it found DCS proved that termination of Mother's parental rights is in the best interest of Child; and

V. Whether the trial court erred when it admitted the testimony of a witness after the close of all the proof in violation of the Rule of Sequestration.

For the following reasons, we affirm the decision of the trial court.

**Standard of Review**

In a civil action, when a trial court sits without a jury, we review its findings of fact *de novo* upon the record with a presumption of correctness; unless the evidence preponderates against such findings, we must affirm, absent an error of law. Tenn. R. Civ. P. 13(d); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re L.J.C., A.L.C., & J.R.C.*, 124 S.W.3d 609 (Tenn. Ct. App. 2003). We review issues of law *de novo* affording these conclusions no presumption of correctness. *Valentine*, 79 S.W.3d at 546 (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).

**Grounds for Termination**

Before a court may terminate a person's parental rights over his or her child, that court must find, by clear and convincing evidence, that one of the grounds for termination exists and that such termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c). "Clear and convincing evidence" has been defined by Tennessee courts as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Valentine*, 79 S.W.3d at 546 (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). In this case, the trial court found that termination of Mother's parental rights was proper on the following grounds: (1) abandonment of Child by failing to visit, (2) abandonment of Child by failing to provide support, and (3) the conditions which led to Child's removal still persist and are unlikely

to be remedied.  In addition, the trial court found that termination of Mother's parental rights is in the best interest of Child.  Mother challenges the trial court's finding that DCS carried its burden of proof on these grounds.  To prevail, Mother must demonstrate that DCS failed to carry its burden of proving any of these grounds since any one of these statutory grounds will support the termination of parental rights.  Tenn. Code Ann. § 36-1-113(g); *Valentine*, 79 S.W.3d at 546 (citing *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000)).

### Abandonment by Failing to Visit

Termination of parental rights may be based upon "[a]bandonment by the parent or guardian, as defined in § 36-1-102."  Tenn. Code Ann. § 36-1-113(g)(1).  One definition for "abandonment" is as follows:

> [f]or a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) . . . have willfully failed to visit. . . .

Tenn. Code Ann. § 36-1-102(1)(A)(i).  For the purposes of this subdivision, "willfully failed to visit" means "the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation."  Tenn. Code Ann § 36-1-102(1)(E).  "Token visitation" means that "the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child."  Tenn. Code Ann. § 36-1-102(1)(c)).

In this case, Mother, despite having access to two reliable vehicles for transportation, went to visit Child at Honeycutt's home on three occasions over the course of a year: July 24, 2002, March 15 and May 10, 2003.  DCS's petition to terminate Mother's parental rights was filed on January 6, 2003.  Though Mother offered testimony that Honeycutt dropped Child off at Mother's home one day in November 2002 and that Mother had other visits with Child, Honeycutt did not corroborate this statement at trial, and the trial court found that the last visit, before DCS's filing of the petition, between Mother and Child occurred in July 2002.  We are mindful that "[w]here the trial judge has seen and heard the witnesses, especially if issues of credibility and weight to be given oral testimony are involved, considerable deference must be accorded those circumstances on review."  *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995) (citing *Townsend v. State*, 826 S.W.2d 434, 437 (Tenn. 1992)).  Mother's self-serving statements do not warrant a reversal of the trial court's finding that DCS proved abandonment by failing to visit for four consecutive months.  Even assuming, *arguendo*, that Mother did visit on more than three occasions, there is clear and convincing evidence in the record to support the trial court's determination that Mother's visitation can be classified as "token" because of its infrequent and perfunctory nature.

Mother insists that her abandonment was not willful because she could not afford to drive both pickup trucks for each visit given that she was the sole wage earner for a four-person family.

However, there was no evidence offered to explain why Mother could not have traveled on these visitations alone, requiring only one vehicle. Additionally, there was insufficient evidence in the record to suggest that the expense of traveling was beyond Mother's means. Finally, Mother argues that such blame for failure to visit should be placed on DCS for failing to offer Mother transportation. However, given Mother's elusive nature with DCS caseworkers, her failure to inquire about DCS-provided transportation, and her refusal to stay in contact with DCS, we cannot say that such circumstances warrant reversal of the finding that Mother's abandonment was willful. Therefore, we affirm the finding of the trial court that a ground for termination, on the basis of abandonment by failure to visit, exists and was proven by clear and convincing evidence. For this reason, we need not address the trial court's findings concerning abandonment for failure to support and persistent conditions.

**Best Interest of the Child**

In addition to finding a ground for termination by clear and convincing evidence, a trial court must also find that such termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c). Tennessee Code Annotated § 36-1-113(i) provides:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i)(1)-(9).

In this case, the trial court found that termination of Mother's parental rights was in the best interest of Child pursuant to factors (1), (2), (3), (4), and (9) above. We find no error in this determination. Upon removal, Child's conduct, health and hygiene improved and such improvement was attributed to the constant supervision and care that Honeycutt has provided Child. Though there was undisputed evidence that Child was always happy to see Mother and upset whenever Mother had to leave at the end of a visit, Mother's visits with Child were so infrequent that it supports the determination that Mother did not have a meaningful relationship with Child. In addition, though Mother and her husband testified that, and offered pictures depicting, their home was clean and ready for Child's return, the DCS caseworker who attempted inspection of Mother's home was constantly refused entrance for various reasons, and on the one occasion she was allowed access, she only saw one room of the home. As the trial court observed, this was "a single instance and is not sufficient proof to constitute a remedy of the conditions that brought [Child] into custody." We believe this single instance is also insufficient to prove that Mother has made an "adjustment of circumstance" and that Mother's home is a safe environment for Child. In addition, Mother testified that, though her child is a special needs child and required placement in a medically fragile foster home, Mother failed to obtain any training through DCS to acquire the skills to care for Child. Finally, it is undisputed that Mother, despite the absence of a child support order, has failed to pay any support for Child; instead, she stated that she offered money to Honeycutt on one occasion and that she provided Honeycutt with blankets, clothes, and toys for Child, but never stated how much or how often. Given the circumstances in this case, we cannot say that the trial court erred when it determined that termination of Mother's parental rights is in the best interest of Child.

## Rule of Sequestration

Finally, Mother argues the trial court erred when it allowed the testimony of Rhonda Wallace ("Wallace"), an employee for Stepping Stones that works with Honeycutt and Child concerning Child's special needs. Specifically, Mother asserts that Wallace's testimony was allowed and considered in violation of Tenn. R. Evid. 615.[1] Such rule states the following:

Rule 615. Exclusion of witnesses. – At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court

---

[1] We note that Mother does not object to Wallace's testimony on the basis that the trial court violated Tenn. R. Evid. 614. Such rule states that a trial court may call a witness only in extraordinary circumstances or if the witness is a court-appointed expert pursuant to Rule 706. However, because Mother did not object to Wallace's testimony on this basis and she does not raise the issue in the instant appeal, we decline to address the provisions of Tenn. R. Evid. 614. *See Mayfield v. Mayfield*, No. 01A01-9304-CV-00145, 1993 Tenn. App. LEXIS 682, at *14-16 (Tenn. Ct. App. Oct. 27, 1993).

shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

Tenn. R. Evid. 615. Mother argues that, because the rule of sequestration was invoked at the beginning of the hearing and Wallace does not fall within any of the exceptions of Tenn. R. Evid. 615, the trial court erred when it allowed Wallace's testimony and considered that testimony. We agree, however, given the circumstances of this case, such error was harmless. When a sequestration rule violation is raised on appeal, we consider the seriousness of the violation and the prejudice, if any, suffered by the objecting party. *See State v. Coleman*, No. M2000-01916-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 84, at \*42-43 (Tenn. Crim. Ct. App. July 18, 2001) (citing *State v. Harris*, 839 S.W.2d 54, 68-69 (Tenn. 1992)); *see also State ex rel. Comm'r of Dep't of Transp. v. Williams*, 828 S.W.2d 397, 402 (Tenn. Ct. App. 1991). In this case, it appears the trial court relied upon Wallace's testimony when it considered the termination ground of persistent conditions. Because we affirm the trial court's finding that termination of Mother's parental rights is proper for the ground of abandonment, such testimony does not change the outcome and causes Mother no prejudice. Therefore, while the trial court erred when it considered Wallace's testimony in violation of Tenn. R. Evid. 615, such error was harmless and does not warrant reversal by this Court.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court terminating Mother's parental rights to Child. Costs of this appeal are taxed against Appellant, Sandra Lilly, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE