# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
July 7, 2020 Session

## MARVIN DUANE JULIAN v. DEBRA ANN JULIAN

**Appeal from the Circuit Court for Warren County**
**No. 2015-CV-328    L. Craig Johnson, Judge**

———————————————————

### No. M2019-01573-COA-R3-CV

———————————————————

In this divorce case, Husband/Appellant appeals the trial's courts award of $200,000.00 to Wife/Appellee under the parties' prenuptial agreement. This award was based on the trial court's finding that Husband's net worth is at least $400,000.00. In their agreement, the parties waived alimony; nonetheless, Husband sought an award of alimony in the trial court. The trial court held that Husband did not meet his burden to show that he was a public charge so as to overcome his waiver of alimony. Because the evidence does not preponderate against the trial court's findings, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Marvin Duane Julian, McMinnville, Tennessee, appellant, pro se.

Cindy Morgan, Sparta, Tennessee, for the appellee, Debra Ann Julian.

## MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. Background

Appellant Marvin Duane Julian ("Husband") and Appellee Debra Ann Julian ("Wife") were married in 1986. Prior to their marriage, the parties executed a prenuptial agreement ("Agreement"). As is relevant to the instant appeal, the Agreement outlined a schedule for lump-sum payments to Wife depending on the length of the marriage. Here, based on the length of the parties' marriage, Wife would receive the maximum sum of $500,000.00, or an amount not to exceed one-half of Husband's net worth.

During most of the marriage, Husband was very successful in his real estate businesses. For example, as of April 15, 1999, Husband's business had assets in excess of 2.6 million. Husband also invested heavily in the stock market. In addition to his business holdings, as of July 22, 1999, Husband had personal assets in excess of 2.3 million as shown by his personal financial statement. In early 1999, the parties separated. Later that year, the parties sought a divorce in Florida, where they resided at the time. Ultimately, the parties dismissed the Florida divorce case. However, Wife claims that after their reconciliation, Husband kept her from accessing any financial documents and proceeded to hide his assets from her.

Wife filed the instant divorce action on June 30, 2015. Prior to her filing, the parties had been living separately for approximately 15 years. At the time she filed for divorce, Wife claimed that Husband's net worth was 3.1 million and sought enforcement of the prenuptial agreement. Thereafter, the parties engaged in protracted discovery. By order of January 14, 2019, the trial court granted the parties a divorce but reserved two issues for separate hearing: (1) Husband's request for alimony, and (2) the amount of Husband's assets subject to division under the parties' prenuptial agreement.

The reserved issues, which are the subject of the instant appeal, were tried on May 3, 2019. By order of August 8, 2019, the trial court held that: (1) Husband had not overcome his waiver of alimony in the Agreement; (2) Husband suffered financial losses of approximately 1.5 million after the separation but did not suffer a complete loss of all assets; (3) Husband has assets of approximately $400,000.00 that could not be accounted for, and (4) Wife is entitled to $200,000.00 under the Agreement. Husband appeals.

## II. Issues

Husband raises two issues for review as stated in his brief:

1.      Whether the trial court erred in finding that [Husband] had $400,000 in assets, despite the extensive evidence that he had sustained serious financial losses for more than a decade, is receiving public assistance, and has been declared indigent, as well as the trial court's finding that there was no evidence that [Husband] had hidden assets.

- 2 -

2.     Whether the trial court erred in not awarding [Husband] alimony, despite being a public charge who satisfies the most important statutory factors for an award of alimony.

In the posture of Appellee, Wife contends that Husband's net worth, at the time of the hearing, was in excess of 1 million. Wife also raises the additional issue of whether she is entitled to her attorney's fees on appeal.

### III. Standard of Review

This case was tried without a jury. Therefore, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

Furthermore, while we are cognizant of the fact that Husband is representing himself in this appeal, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." ***Brown v. Christian Bros. Univ.***, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). This Court has held that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts." ***Hodges v. Tenn. Att'y Gen***., 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); ***Paehler v. Union Planters Nat'l Bank, Inc.***, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." ***Young v. Barrow***, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003); ***Edmundson v. Pratt***, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); ***Kaylor v. Bradley***, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995).

### IV. Husband's Assets

Based on the length of the parties' marriage, their Agreement provides that Wife will receive the following:

As to the Final Dissolution of Marriage occurring after the end of the twentieth year and any time thereafter: $250,000.00 payable in twenty-five (25) equal monthly installments of $10,000.00 each together with a cash lump sum payment of $250,000.00 being paid at the end of the 25 month period for a total settlement of $500,000.00.
In no event shall any of the above settlements be greater than the sum of 50% of [Husband's] net worth as assessed at the time of the Final Dissolution of the marriage. . . .

In its August 8, 2019 order, the trial court made the following relevant findings concerning Husband's assets and Wife's share of same under the Agreement:

> As to the property division issue governed under the prenuptial agreement, the Court notes that both sides in this case have been difficult in cooperating with discovery requests. This case has gone on too long with inaction on both sides. [Husband] has given enough proof to show that he sustained losses of just over One and One-Half Million Dollars ($1,500,000.00) to his holdings after the separation, but has failed to convince the Court that he has suffered a complete loss.
>
> Given the equities in this case and the fact that it appears that [Husband] has assets of around Four Hundred Thousand Dollars ($400,000.00) that he cannot account for, the Court splits the property in question and awards Ms. Julian Two Hundred Thousand Dollars ($200,000.00) of [Husband's] assets.

Turning to the record, at or around the time of the parties' separation in 1999, profit and loss statements submitted as Trial Exhibit 16 show Husband had a net worth of approximately 4.9 million. This amount was comprised of business assets in the amount of 2.6 million and personal assets of approximately 2.3 million. However, subsequent tax returns show that, by 2008, Husband's business was operating at a loss. Husband testified that declines in the real estate market, coupled with unprofitable business ventures, led to the insolvency of his company. Business tax returns support Husband's testimony concerning his business losses.

Likewise, Husband's personal net worth declined after 1999. Husband testified to losses in the stock market. As set out in context above, the trial court inferentially determined that Husband's net worth had fallen to approximately 1.9 million since he executed his profit and loss statement. Of this 1.9 million, the trial court found that Husband sustained losses of "just over One and One-Half Million Dollars ($1,500,000)" by the time of the hearing on May 3, 2019. Tax returns admitted into evidence show that Husband's personal wealth decreased steadily from the time of the parties' separation. Husband argues that he suffered losses in excess of his original net worth, i.e., 2.3 million, and that he is a pauper. Wife claims that Husband's net worth at the time of the May 3, 2019 hearing was in excess of 1 million. Having determined that Husband's proof supported claimed losses of just over 1.5 million, and based on its finding that the remainder of Husband's net worth, i.e., approximately $400,000.00, was unaccounted for, the trial court set Husband's net worth at that $400,000.00 and awarded Wife half of the that amount pursuant to the parties' Agreement.

From our review of the evidence in this case, especially Husband's convoluted testimony concerning the transfer of large sums of money to his family members, we

cannot conclude that the evidence preponderates against the trial court's finding that Husband's net worth was approximately $400,000.00. On cross-examination by Wife's counsel, Husband would not give a clear answer as to the whereabouts of these funds, to-wit:

> Q. Right now, though, for this court's purposes you have no documents whatsoever showing where the $402,000 went. Is that fair to say?
> A. No, that's not fair to say at all. You have all my income tax returns.
> Q. Well, your income tax returns doesn't show where the money was deposited and what it was spent on . . .

From our review, Husband's tax returns do not specifically account for the $402,000.00. From its order, the trial court was not persuaded by Husband's contention that he was not in possession of the disputed amount. It is well settled that, "Where the trial court's factual findings are based on its determinations of the credibility of the witnesses, then this Court will afford great weight to those credibility determinations and will not reverse such determinations absent clear evidence to the contrary." *See* ***McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995) (citing ***Townsend v. State***, 826 S.W.2d 434, 437 (Tenn. 1992)); *see, e.g.*, ***Interstate Mech. Contractors, Inc. v. McIntosh***, 229 S.W. 3d 674, 682 (Tenn. 2007) (finding that where "[t]he trial court had the opportunity to observe the demeanor and gauge the credibility" of the witness, "we may infer that the trial court found" that the witness' testimony was credible or not).

From our review of the record, Wife's contention that Husband's net worth is in excess of 1 million is not supported by the evidence, nor is Husband's contention that he is a pauper. Rather, we conclude that the evidence does not preponderate against the trial court's finding that Husband's net worth, at the time of the hearing, was $400,000.00. As set out above, under the Agreement, Wife is entitled to one-half of the $400,000.00 found by the trial court. Accordingly, we affirm the trial court's award of $200,000.00 to Wife.

### V. Husband's Request for Alimony

The parties' Agreement provides, in relevant part:

In the event the marriage is dissolved, for whatever reason, [Husband] and [Wife] agree that neither party shall make any claim whatsoever against the other for alimony of any sort. Both parties renounce any right to seek any support from the other for a standard of living which he or she has become accustomed to and/or any other compensation . . . .

The Tennessee Supreme Court has previously ruled "that a voluntary and knowing waiver or limitation of alimony in an antenuptial agreement is not per se void and unenforceable as contrary to public policy. Such provisions will be fully enforced, unless

enforcement will render one spouse a public charge." ***Cary v. Cary***, 937 S.W.2d 777, 782 (Tenn. 1996). The ***Cary*** Court specifically found that "the State's interest in providing adequate support for its citizens precludes specific enforcement of such a contract provision if enforcement deprives one spouse of support that he or she cannot otherwise obtain and results in that spouse becoming a public charge." ***Id.***

Here, the trial court held that Husband did not show that he is a public charge. Specifically, in its August 8, 2019 order, the trial court explained that

> [i]t was apparent from the testimony that [Husband] was a man of wealth and property during most of the marriage. He did suffer some major setbacks during the economic decline of 2008 and subsequently. [Husband's] main argument [for an award of alimony] is that he is a public charge. He did present proof that he is on food stamps. However, he presented no proof that he cannot work. In fact, he is currently taking care of his elderly father by his own choice and lives for free with him. The presented evidence is not enough to overcome his waiver of alimony in the prenuptial agreement. [Husband] has failed to establish by the burden of proof that he is a "public charge."

Indeed, there is no indication in the record that Husband is unable to work. Despite his economic downturn and evidence that he is currently receiving food stamps, from the record there can be no doubt that Husband is a savvy businessman. Historically, he has accumulated significant wealth. Husband currently cares for his aged father and has chosen not to pursue other employment. While we appreciate Husband's decision, the fact remains that, by all evidence, he is able to provide for himself. This is especially so in view of our affirmance of the trial court's determination that his net worth is at least $400,000.00. From the totality of the proof, we agree with the trial court that Husband has provided insufficient proof to show that he is a public charge so as to overcome his waiver of alimony in the Agreement.

### VI. Wife's Request for Appellate Attorney's Fees

The parties waived attorney's fees in their Agreement, to-wit:

> In the event that any divorce proceedings are instituted between the parties involving this Agreement, marriage, divorce, separation, child custody, support, maintenance or any other matter between the parties, each agrees to be responsible for his or her own attorneys fees.

Having waived an award of attorney's fees, Wife's only ground for recoupment of her appellate attorney's fees is for frivolous appeal under Tennessee Code Annotated section 27-1-122, which provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision whether to award damages for a frivolous appeal rests solely in this Court's discretion. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). We conclude that this appeal is not so devoid of merit as to characterize it as frivolous. Accordingly, we exercise our discretion to decline Ms. Julian's damages for frivolous appeal.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Marvin Duane Julian, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE