FILED

May 6, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

| | |
|---|---|
| WILLIS L. BRADSHAW, **Employee**, | Docket No.: 2014-06-0056 |
| v. | State File No.: 79765-2014 |
| JEWELL MECHANICAL, LLC, **Employer**, | Date of Injury: August 11, 2014 |
| And | Judge: Pamela B. Johnson |
| FEDERATED MUTUAL INSURANCE, **Insurance Carrier.** | |

# EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed on March 11, 2015, by Willis L. Bradshaw (Mr. Bradshaw), pursuant to Tennessee Code Annotated section 50-6-239. The Court convened an evidentiary hearing via teleconference on April 14, 2015. Upon review of Mr. Bradshaw's Request for Expedited Hearing, the evidence presented at the hearing, the arguments of counsel for the parties, and in consideration of the applicable law, the Court enters the following order holding that Mr. Bradshaw is not entitled to temporary disability or medical benefits.

### Issues

*Whether Mr. Bradshaw sustained a "new" injury or aggravation of a pre-existing injury on August 11, 2014, arising primarily out of and in the course and scope of his employment with Jewell Mechanical, LLC; or, in the alternative, whether Mr. Bradshaw's injury of August 11, 2014, was a natural consequence or progression of his January 10, 2014 work injury; and,*

*If determined to be compensable under the Tennessee Workers' Compensation Law, whether Mr. Bradshaw is entitled to any past or future temporary disability benefits, and if so, in what amount.*

1

**Stipulations of the Parties**

The parties, through counsel, announced to the Court the following stipulations:

- Mr. Bradshaw's workers' compensation rate is $637.31 per week.
- Mr. Bradshaw missed work from September 23, 2014, through October 21, 2014, while receiving medical treatment for the alleged work injury.

**Evidence Submitted**

The Court designated the following as the Technical Record:

- Petition for Benefit Determination, filed November 6, 2015
- Dispute Certification Notice, filed December 10, 2015
- Request for Expedited Hearing, filed March 11, 2015

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and any attachments to them as allegations unless established by the evidence.

The Court admitted into evidence the following:

- EXHIBIT 1: Affidavit of Willis Bradshaw (2 pages)
- EXHIBIT 2: Affidavit of Certification of Records and Medical Records of Dr. W. Blake Garside, Tennessee Orthopedic Alliance (111 pages)
- EXHIBIT 3: Prior Settlement Documents - *Willis L. Bradshaw v. Jewell Mechanical, LLC and Federated Mutual Insurance,* Davidson County Chancery Court, Docket: 14-914-III (9 pages)
- EXHIBIT 4: First Report of Work Injury, Form C-20, for January 10, 2014 date of injury
- EXHIBIT 5: First Report of Work Injury, Form C-20, for August 11, 2014 date of injury
- EXHIBIT 6: Notice of Controversy, Form C-27, for August 11, 2014 date of injury
- EXHIBIT 7: Job Description
- EXHIBIT 8: Wage Statement, Form C-40, for August 11, 2014 date of injury
- EXHIBIT 9: Affidavit of Donna Biter (3 pages)

**History of Claim**

Mr. Bradshaw worked as a lead installer for Jewel Mechanical. *See* Exhibit 7. On January 10, 2014, Mr. Bradshaw stepped from a scissor lift and experienced the immediate onset of pain in his right knee. *See* Exhibit 4. Mr. Bradshaw timely reported the January, 2014 work injury and received workers' compensation benefits. As a result of the January, 2014 work injury, Dr. Blake Garside performed a right knee arthroscopy with partial medial meniscectomy, debridement of lateral meniscus and ACL reconstruction. *See* Exhibit 2 at p. 64. Dr. Garside

placed Mr. Bradshaw at maximum medical improvement on May 13, 2014, and assigned a twelve percent (12%) permanent medical impairment to the right leg. *See* Exhibit 2 at pp. 19-20, 99. Mr. Bradshaw returned to work for Jewel Mechanical without restriction. Mr. Bradshaw and Jewel Mechanical reached a settlement in the January, 2014 work injury claim for one and one-half times (1.5x) the permanent medical impairment and Mr. Bradshaw retained the right of reconsideration and lifetime future medical benefits for the right knee. *See* Exhibit 3.

On August 11, 2014, Mr. Bradshaw stepped from a scissor lift and again experienced the immediate onset of pain in his right knee. *See* Exhibit 5. Mr. Bradshaw reported the incident to his supervisor.

On August 26, 2014, Mr. Bradshaw returned to Dr. Garside for evaluation of his right knee complaints. The August 26, 2014 office note provides the following history in pertinent part:

> Willis Bradshaw returns with complaints of right knee pain and swelling for 1 week. He denies any recent injury or trauma. His pain occurred after he got off a scissor lift. He denies falling. He has had no locking or giving way. He has discomfort with bending, twisting, walking, ascending or descending stairs. He has noted some tightness. He has tried a Polar Pack with no relief of his symptoms. He has been on no medications. He underwent ACL reconstruction with partial meniscectomy on February 3, 2014. He was placed at MMI on May 13, 2014. I have not seen him since then.

*See* Exhibit 2 at p. 21. Following physical examination, Dr. Garside diagnosed right knee effusion and aspirated the right knee. Dr. Garside further prescribed Naprosyn for pain and released Mr. Bradshaw to regular work duties and activities. A WorkLink Physician's Report completed by Dr. Garside at the conclusion of the appointment identifies the "DOI" (date of injury) as "01/10/2014." *See* Exhibit 2 at p. 106.

On September 16, 2014, Mr. Bradshaw returned to Dr. Garside. The September 16, 2014 office note provides the following history in pertinent part:

> Willis Bradshaw returns today with complaints of persistent medial pain. This has been present since Friday. He has been unable to fully extend his knee or leg with walking. He has had increasing pain and he feels as if he has had a recurrence in his swelling. Mr. Bradshaw is 7-1/2 months status post right ACL reconstruction and partial medial meniscectomy. He did well until three weeks ago when he developed some increasing pain and discomfort after stepping off a scissor lift.

*See* Exhibit 2 at p. 23. Dr. Garside noted marked mechanical symptoms and recurrent swelling in the right knee. Mr. Bradshaw expressed concern about the possibility of recurrent meniscal

tear versus osteochondral lesion involving the medial femoral condyle. Dr. Garside, therefore, recommended an MRI of the right knee "to better evaluate his meniscal and ligamentous structures at the present time and to evaluate his ACL reconstruction." *Id.* Dr. Garside advised Mr. Bradshaw to continue regular duty. Dr. Garside completed a WorkLink Physician's Report confirming the return to regular duty work and referral for an MRI. *See* Exhibit 2 at p. 105. The WorkLink Physician's Report identifies the "DOI" as "01/10/2014." *Id.*

On September 23, 2014, Mr. Bradshaw returned to see Dr. Garside for follow-up of his right knee pain. Dr. Garside reviewed the MRI and "noted intact ACL reconstruction and no retain of this medial meniscus." *See* Exhibit 2 at pp. 24, 41. Dr. Garside further noted "some associated development of stress reaction and bone marrow edema." *Id.* Dr. Garside diagnosed "right knee chondromalacia and stress injury right medial tibial plateau." *Id.* Dr. Garside placed Mr. Bradshaw on restrictions of no climbing or squatting and instructed Mr. Bradshaw to return in one month for re-evaluation of weight bearing and radiographs of the right knee. Dr. Garside completed a WorkLink Physician's Report confirming the restrictions and setting a return appointment. *See* Exhibit 2 at p. 104. The WorkLink Physician's Report identifies the "DOI" as "01/10/2014." *Id.*

Jewel Mechanical filed a Notice of Controversy, Form C-27, on October 16, 2014, stating "Injury by accident vs. continuation of covered prior claim of 01/10/2014 for same knee which indemnity was settled and medicals left open for continued treatment" *See* Exhibit 6.

On October 21, 2014, Mr. Bradshaw saw Dr. Garside for follow-up of his "right tibial stress fracture." *See* Exhibit 2 at p. 25. Mr. Bradshaw reported that he was "pain-free" at the present time and anxious to return to work. *Id.* The report concerning imaging studies obtained during the office visit stated "These reveal progressive medial compartment narrowing when compared to January 2014 radiographs. His hardware is in place. There are no acute fractures noted. There is no collapse along the medial compartment." *Id.* Dr. Garside released Mr. Bradshaw to resume activities as tolerable, and instructed him to return in the future as needed. Dr. Garside additionally completed a "WorkLink Physician's Report," indicating that Mr. Bradshaw could "Return to Regular Duty on 10/22/2014." *See* Exhibit 2 at p. 103. The WorkLink Physician's Report lists the "DOI" (date of injury) as "01/10/2014." *Id.*

Mr. Bradshaw, through counsel, filed a Petition for Benefit Determination on November 6, 2014, seeking temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediating Specialist filed the Dispute Certification Notice on December 10, 2014. On March 11, 2015, Mr. Bradshaw filed a Request for Expedited Hearing, asking this Court to find that a "new injury" occurred on August 11, 2014, and to award Mr. Bradshaw temporary total disability for the period from September 23 through October 21, 2014. Counsel for the parties appeared by telephone for the Expedited Hearing on April 14, 2015. Mr. Bradshaw, for the Employee, and Donna Biter, for the Employer, testified by sworn affidavit. *See* Exhibits 1 and 9 respectively.

4

## Employee's Contentions

Mr. Bradshaw contends that, on August 11, 2014, while performing his job duties in the course and scope of his employment at Jewel Mechanical, he stepped off a scissor lift and experienced the immediate onset of pain in his right knee. Mr. Bradshaw reported the "new incident" to Jewel Mechanical. However, at that time, he thought he aggravated his January 10, 2014 work injury so he returned to Dr. Garside for evaluation of his knee. Until he received the diagnosis of a "new fracture" from his authorized treating physician, he was unaware that he suffered a "new injury." Once Dr. Garside informed him that this was a new injury, and not an aggravation of his previous injury, he notified Jewel Mechanical that this was a "new workers' compensation injury." Jewel Mechanical denied his workers' compensation claim and failed to accommodate his restrictions. As a result, he missed work from September 23, 2014, until released to full duty by Dr. Garside on October 21, 2014. During this four (4) week period, he received no pay or temporary disability benefits. *See generally* Exhibit 1.

Mr. Bradshaw argues that the MRI in September, 2014, first identified the "new injury" and showed a stress fracture at the right medial/tibial plateau. The diagnosis following the August 11, 2014 work incident is, therefore, different from the diagnosis made after the January 10, 2014 work incident. As shown on the diagnostic testing, Mr. Bradshaw sustained a new and distinct injury. Therefore, Mr. Bradshaw claims entitlement to $2,640.28 in temporary total disability benefits for the period from September 23 through October 21, 2014.

## Employer's Contentions

Jewel Mechanical contends that, because of the January 10, 2014 work injury, Mr. Bradshaw regularly experienced problems with his right knee during the summer of 2014. The General Manager, Donna Biter, communicated with Mr. Bradshaw pertaining to his leg and how his prior injury affected him on the job. However, Mr. Bradshaw did not advise Ms. Biter that he sustained or claimed a new injury to his knee in August, 2014, or that he required treatment from Dr. Garside in late August and early September, 2014. On September 29, 2014, Ms. Biter received a modified duty work slip from Tennessee Orthopaedic Alliance with restrictions of no climbing and no squatting, and contacted Mr. Bradshaw. During this telephone conversation, Mr. Bradshaw could not recall the specific date that the alleged "new" injury occurred. Mr. Bradshaw told Ms. Biter that "he was walking across the floor when he felt tightness in his knee." Mr. Bradshaw provided two potential dates when the alleged "new" incident occurred, but further verification revealed that he was not working on the dates provided. Ms. Biter inquired further with Mr. Bradshaw and discussed his timesheets with him. Mr. Bradshaw then picked a date at the job site where he thought the alleged incident occurred. *See generally* Exhibit 9.

Jewel Mechanical avers that Mr. Bradshaw provided inconsistent histories to Dr. Garside. On August 26, 2014, Mr. Bradshaw denied any recent injury or trauma. On September 16, 2014, Mr. Bradshaw reported that his knee pain was "present since Friday." On September 23, 2014, when Mr. Bradshaw returned to Dr. Garside after completing the MRI scan, there was no reference to a new injury by Dr. Garside.

5

Jewel Mechanical thus argues that Mr. Bradshaw failed to satisfy his burden of proof that the August 11, 2014 work incident resulted in the advancement of an underlying condition or a "new" injury. There is no document or statement from any physician opining that the August 11, 2014 work incident primarily caused the stress reaction, considering all causes. As such, Jewel Mechanical maintains that it properly offered medical benefits through the open medicals provision of the prior settlement, and properly denied temporary disability benefits for the missed time in September and October, 2014.

## Findings of Fact and Conclusions of Law

### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that "[u]nless the statute provides for a different standard of proof, at a hearing, the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. section 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at Expedited Hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A Workers' Compensation Judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. 50-6-239(d)(1) (2014); *McCall v. Nat'l Health Care Corp.,* 100 S.W.3d 209, 214 (Tenn. 2003).

### *Factual Findings*

The Court finds that, while working for Jewel Mechanical, Mr. Bradshaw stepped from a scissor lift on or about August 11, 2014, and experienced pain and swelling in his right knee. Mr. Bradshaw initially believed that he aggravated his January, 2014 injury and returned to see his authorized treating physician, Dr. Garside. Upon learning that the symptoms arising from the August, 2014 work incident possibly resulted in a "new" injury, Mr. Bradshaw timely reported the August, 2014 work incident to Jewel Mechanical.

### *Application of Law to Facts*

The Tennessee Workers' Compensation Act defines "injury" and "personal injury" as an injury by accident,… arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that:

> (A) An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to

a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment;

(B) An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;

(C) An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes;

(D) "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility;

(E) The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence.

Tenn. Code Ann. § 50-6-102(13) (2014).

In the present case, Mr. Bradshaw identified a specific incident, identifiable by time and place. Mr. Bradshaw further demonstrated that the specific incident occurred while he performed his job duties at Jewel Mechanical. The issue then turns to whether the August, 2014 incident resulted in an injury arising primarily out of and in the course and scope of employment or whether the incident resulted in an aggravation, arising out of and in the course and scope of employment, and shown by a reasonable degree of medical certainty.

The general rule is that aggravation of a pre-existing condition may be compensable but not if it results only in increased pain or other symptoms caused by the underlying condition. *Cunningham v. Goodyear Tire & Rubber Co.*, 811 S.W.2d 888, 891 (Tenn. 1991). An employer is responsible for workers' compensation benefits, even though the employee may have been suffering from a serious pre-existing condition or disability, but only if the employment causes an actual progression or aggravation of the prior disabling condition or disease. *Hill v. Eagle Bend Mfg., Inc.*, 942 S.W.2d 483, 488 (Tenn. 1997); *White v. Werthan Indus.*, 824 S.W.2d 158, 159 (Tenn. 1992); *Talley v. Va. Ins. Reciprocal*, 775 S.W.2d 587, 592 (Tenn. 1989). While it is true that an employer takes the employee with all pre-existing conditions and cannot escape liability when the employee, upon suffering a work-related injury, incurs disability greater than if he or she had not had the pre-existing conditions; if work aggravates a pre-existing condition merely by increasing pain, there is no injury by accident. *Sweat v. Superior Indus., Inc.*, 966 S.W.2d 31, 32-33 (Tenn. 1998). To be compensable, the pre-existing condition must be

7

advanced, there must be anatomical change in the pre-existing condition, or the employment must cause an actual progression of the underlying disease. *Id.*

In *Trosper v. Armstrong Wood Prods., Inc.*, 273 S.W.3d 598 (Tenn. 2008), the Supreme Court examined the issue of aggravation of a pre-existing injury or condition and clarified the analysis to be applied in such cases, stating:

> We believe that our holding in *Smith's Transfer* [*Smith v. Smith's Transfer Corp.*, 735 S.W.2d 221, 225-26 (Tenn.1987)], which we have cited with approval on numerous occasions, *see, e.g., Townsend [v. State]*, 826 S.W.2d [434,] 436 (Tenn. 1992], provides the proper framework where an employee seeks compensation on the grounds that a work injury has aggravated a pre-existing injury or condition. We reiterate that the employee does not suffer a compensable injury where the work activity aggravates the pre-existing condition merely by increasing the pain. However, if the work injury advances the severity of the pre-existing condition, or if, as a result of the pre-existing condition, the employee suffers a new, distinct injury other than increased pain, then the work injury is compensable.

*Trosper*, 273 S.W. 3d at 607. *See also Poindexter v. Roadway Express*, 2014 Tenn. LEXIS 695, *8-9 (Tenn. Workers' Comp. Panel Sept. 29, 2014).

In this case, the MRI scan suggests a "new, distinct" stress reaction, not previously identified on the diagnostic testing performed following the January, 2014 work incident. However, each WorkLink Physician's Report issued following the August 11, 2014 work incident identifies the date of injury as January 10, 2014. Further, Dr. Garside does not provide an opinion within a reasonable degree of medical certainty that the August 11, 2014 work incident caused a "new" injury arising primarily out of and in the course and scope of the employment, or, in the alternative, that the August 11, 2014 work incident caused an aggravation arising out of and in the course and scope of employment. In other words, Mr. Bradshaw failed to demonstrate that the August 11, 2014 work incident caused a "new and distinct" injury or "advanced the severity" of the pre-existing right knee injury. Therefore, based upon the evidence presented at this time, the Court must conclude that Mr. Bradshaw is not likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. The claim of Mr. Bradshaw against Jewell Mechanical or its workers' compensation carrier for the requested temporary disability benefits is denied at this time.

2. This matter is set for Initial Hearing on June 24, 2015, at 9:00 a.m. central/ 10:00 a.m. eastern time.

**ENTERED this the 6th day of May, 2015.**

_Pamela B Johnson_

HON. PAMELA B. JOHNSON
Workers' Compensation Judge

Initial Hearing:

An Initial Hearing has been set for June 24, 2015, at 9:00 a.m. central/ 10:00 a.m. eastern, with Judge Pamela B. Johnson, Court of Workers Compensation. You must call 855-543-5041 or toll free at 865-594-0091 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk _within seven (7) business days_ of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 6th day of May, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Marshall McClarnon, III, Esq. | | | X | marshall@poncelaw.com |
| D. Brett Burrow, Esq. | | | X | bburrow@bkblaw.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

10