# IN THE SUPREME COURT OF TENNESSEE
## SPECIAL WORKERS' COMPENSATION APPEALS PANEL
### AT JACKSON
#### Assigned on Briefs May 26, 2023

## PATRECE EDWARDS-BRADFORD v. KELLOGG COMPANY, ET AL.

**Appeal from the Court of Workers' Compensation Claims**
**No. 2021-08-0418   Deana C. Seymour, Judge**

**No. W2022-01097-SC-R3-WC – Mailed August 3, 2023**

FILED

SEP 0 5 2023

Clerk of the Appellate Courts
Rec'd By _____

Employee Patrece Edwards-Bradford filed a petition for benefit determination seeking permanent disability benefits for an alleged back injury. The Court of Workers' Compensation Claims denied Employee's claim, finding that she had not rebutted the presumption of correctness afforded to the causation and impairment opinions of her authorized treating physicians, and was therefore not entitled to permanent disability benefits. Employee has appealed, and the appeal has been referred to the Special Workers' Compensation Appeals Panel for consideration and a report of findings of fact and conclusions of law pursuant to Tennessee Supreme Court Rule 51. We affirm.

**Tenn. Code Ann. § 50-6-217(a)(1) Appeal as of Right;**
**Judgment of the Court of Workers' Compensation Claims Affirmed**

THOMAS J. WRIGHT, SR. J., delivered the opinion of the court, in which JEFFREY S. BIVINS, J., and ROY B. MORGAN, SR. J., joined.

Christopher L. Taylor, Memphis, Tennessee, for the appellant, Patrece Edwards-Bradford.

Thomas J. Smith, Nashville, Tennessee, for the appellees, Kellogg Company and Old Republic Insurance Company.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Patrece Edwards-Bradford ("Employee") filed a petition for benefit determination in the Court of Workers' Compensation Claims on April 23, 2021, related to an alleged

injury incurred during her employment with Kellogg Company ("Employer").[1] The case proceeded to a hearing on June 8, 2022, where the parties agreed that only the right to permanent disability benefits was at issue.

Employee was fifty years old at the time of the hearing. She testified that she began work for Employer in 2001. Employee testified that prior to the incident at issue in this case, she had not complained of any work injuries and had not suffered any injuries to her back.

Employee testified that, on June 5, 2019, she "was getting the stacks out of the stacker" when a coworker appeared and took a stack out of her hand and threw it in the trash. Apparently, there was a dispute about who was supposed to be working at the particular position on this day and shift. Employee testified that she grabbed a second stack, and the coworker also took that stack out of her hands and threw it in the trash as well. Employee stated that the coworker then began to elbow her aggressively, so Employee grabbed a crank at the stacker and her feet became tangled in a mat. Employee testified that the coworker then began beating her hand to make her let go of the crank and also started elbowing her in the back. Employee stated that the dispute "lasted for a while" until another employee appeared and told them to stop.[2]

Employee testified she resumed working after the incident and did not have any pain or complaints at that time. However, she started to experience pain about four days later and saw a chiropractor on June 12, 2019. She filed an incident report with Employer on June 14, 2019.

On June 17, 2019, Employee was provided a panel of physicians and selected Dr. Fereidoon Parsioon as her authorized treating physician. Dr. Parsioon first saw Employee on July 25, 2019. He obtained x-rays of her lumbar spine which showed degenerative changes. His examination of Employee was unremarkable except for a limited range of motion in her back and some decreased sensation in her toes.

There was a mistake about whether Employee had also been in a car accident that

---

[1] Employer also is referred to at various points in the record as Kellogg USA LLC and Kelloggs USA Inc. On appeal, counsel for Employer refers to it as Kellogg Company.

[2] A witness for Employer testified that an investigation was conducted and Employer determined there was no evidence of a physical altercation on the day of the incident. However, the trial court found Employee's testimony regarding the incident more believable, and whether there was a physical alteration is not at issue on appeal.

2

caused her to experience back pain. In addition, the nature of the work altercation was in dispute. Both of these allegations were communicated to Dr. Parsioon by the insurance company, which caused him to release her without restrictions from his care as a workers' compensation designated physician. However, Employee later provided evidence there had not been a car accident. Dr. Parsioon saw Employee two additional times, in August and September 2019.

An MRI was obtained on July 31, 2019, which confirmed degenerative changes in the low back. Dr. Parsioon concluded that there was no acute injury and that the findings were old, degenerative, and chronic. He sent her to physical therapy for three weeks. Dr. Parsioon saw her again September 16, 2019, and noted that she had no anatomical changes as a result of the minor injury at work. He found she was at maximum medical improvement and assigned a permanent impairment rating of zero.

At that point in time, Employee testified she was experiencing numbness in her right leg, tingling, pain, severe pain in her back, spasms, difficulty walking, standing, and sitting, with all of the pain on her right side. She testified that she had not experienced any of those issues in the past, although she had seen a chiropractor in the past for soreness in her upper back. Having terminated treatment with Dr. Parsioon, Employee next selected Dr. Sam Murrell as her authorized treating physician.

Dr. Murrell first saw Employee on October 21, 2019, and noted that the MRI showed no discrete injury. He gave Employee a steroid pack and an epidural steroid injection and referred her to physical therapy. Employee testified that she discussed the possibility of surgery with Dr. Murrell during a subsequent visit on January 31, 2020, but she was not interested in surgery at that time. Dr. Murrell found Employee at maximum medical improvement on May 6, 2020, with no permanent impairment, and returned her to work without restriction.

Employee returned to Dr. Murrell over a year later, on July 26, 2021, with some recurrent symptoms. She requested a new referral to her chiropractor. Dr. Murrell noted that Employee was working full-time without restriction and wanted to continue to do so.

Employee stated that, at the time of the hearing, June 8, 2022, she was still experiencing pressure, pain, spasms, tingling, and numbness that affects her ability to do things such as wash her daughter's hair, mop, and vacuum. She testified she cannot ride in a car for long periods of time or walk for too long, and her sleep and ability to lift things also has been affected. She stated she did not have those issues before the incident.

3

On cross-examination, Employee testified that she continues to work without restriction twelve to sixteen hours a day, seven days a week, and that her work includes lifting. Employee stated that she began seeing a chiropractor in January 2018 for soreness all over her neck and back, and she informed Dr. Parsioon that she had been seeing a chiropractor for that reason. Employee testified that prior to the incident at issue, she had never seen a doctor for back "pain," although she had seen a chiropractor for back "soreness." Employee also agreed she had been released from care by Dr. Murrell with no work restrictions.

Dr. Apurva Dalal saw Employee for an independent medical evaluation on September 9, 2020, at the request of Employee's attorney. Dr. Dalal testified by deposition at the hearing. Dr. Dalal is a board-certified orthopedic surgeon and is also board-certified in independent medical evaluations. He testified that his physical examination of Employee showed moderate tenderness in the lower lumbar spine, paraspinal muscle spasms, occasional bursitis in the right hip, and that the straight leg test was positive at thirty degrees and sixty degrees on the right side. The examination further showed altered sensation in the L5 and L5-S1 distribution on the right leg. Dr. Dalal also performed a radiograph that he testified showed multilevel degenerative disc disease. Dr. Dalal testified that Employee had an aggravation of preexisting degenerative arthritis due to her work-related injury and assigned an impairment rating of seven percent to the body as a whole.

At his deposition on cross-examination, Dr. Dalal testified that he spent less than an hour with Employee. He testified that he believed he had reviewed the medical records of Dr. Parsioon and Dr. Murrell, although he was unsure whether those records were still in his file. Dr. Dalal testified that Employee told him she had never seen a doctor previously for back pain, and that she did not have any issues with her back prior to the incident. He testified that if Employee had been seen previously by a chiropractor for soreness in her neck and back, that would be different from what Employee told him.

The deposition testimony of Dr. Murrell also was introduced at the hearing. Dr. Murrell testified that he is an orthopedic surgeon who treated Employee. He is board-certified in orthopedic surgery and specializes in spinal surgery. His education includes degrees from Harvard and Vanderbilt. He completed his residency in orthopedics at Emory University followed by a fellowship in Spine Surgery at the Rothman Institute, Thomas Jefferson University in Philadelphia. He testified he believed Employee was experiencing low back pain following her work injury, but an MRI scan did not show a discrete injury attributable to the incident, only degenerative changes. His diagnosis was that Employee had degenerative disc disease of the lumbar spine with an element of stenosis at L3-4 and L4-5. He testified that on May 6, 2020, he determined Employee had reached maximum

4

medical improvement with no permanent impairment, and he released her with no work restrictions.

Dr. Parsioon was not deposed, but the medical records introduced at the hearing indicate he last saw Employee on September 16, 2019. The notes from that visit indicate Employee's range of motion of the back was limited in flexion to sixty degrees, a straight leg raising test was negative bilaterally, and her examination was otherwise within normal limits. The notes indicate that Dr. Parsioon told Employee "that she does not have any anatomical changes as a result of this minor injury that she had at work." Dr. Parsioon released Employee from his care, stating she could work for two weeks with eight-hour shifts without limitations, and then return to the number of hours per shift she previously worked. The notes further state he placed her at maximum medical improvement with no permanent impairment.

On June 29, 2022, the trial court entered a compensation order denying Employee's claim. The trial court found Employee did not rebut the presumption of correctness afforded to the causation and impairment opinions of the authorized treating physicians. Therefore, she was not entitled to permanent disability benefits.

On appeal, Employee argues that the trial court erred in determining that her injury was not work related and in finding Dr. Dalal's opinion regarding impairment failed to overcome the presumption of correctness afforded the authorized treating physicians.

### STANDARD OF REVIEW

Review of factual issues is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-225(a)(2) (2022). When the trial court has seen and heard the witnesses, considerable deference must be afforded the trial court's factual findings. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). No similar deference need be afforded the trial court's findings based upon documentary evidence such as depositions. *Glisson v. Mohon Int'l, Inc./Campbell Ray*, 185 S.W.3d 348, 353 (Tenn. 2006). Similarly, reviewing courts afford no presumption of correctness to a trial court's conclusions of law. *Seiber v. Reeves Logging*, 284 S.W.3d 294, 298 (Tenn. 2009).

### ANALYSIS

"'Except in the most obvious, simple and routine cases,' a claimant must establish

5

by expert medical evidence the causal relationship between the claimed injury and the employment activity." *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991)). A claimant has the burden of proving causation by a preponderance of the evidence. Tenn. Code. Ann. § 50-6-239(c)(6) (2022). An authorized treating physician's opinion "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence[.]" Tenn. Code Ann. § 50-6-102(14)(E) (2022).

In the present case, Dr. Murrell testified that while he believed Employee experienced pain following the incident at work, she did not experience an injury related to the work incident. Instead, Dr. Murrell testified that Employee had only degenerative disc disease of the lumbar spine with an element of stenosis and that Employee reached maximum medical improvement with no permanent impairment. The medical records from Employee's treatment with Dr. Parsioon are consistent with those of Dr. Murrell, finding Employee had reached maximum medical improvement with no permanent impairment. The opinions of these authorized treating physicians are presumed to be correct unless rebutted by a preponderance of the evidence.

Employee testified that she had increased pain after the work incident and Dr. Dalal testified that the work incident made Employee's preexisting degenerative condition symptomatic. However, an injury is "not compensable if it results only in increased pain or other symptoms caused by the underlying condition." *Sweat v. Superior Indus., Inc.*, 966 S.W.2d 31, 32 (Tenn. 1998); *Boling v. Raytheon Co.*, 448 S.W.2d 405, 408 (Tenn. 1969). The Supreme Court reaffirmed this point of law in *Trosper v. Armstrong Wood Prods., Inc.*, 273 S.W.3d 598, 607 (Tenn. 2008), stating:

> We reiterate that the employee does not suffer a compensable injury where the work activity aggravates the pre-existing condition merely by increasing the pain. However, if the work injury advances the severity of the pre-existing condition, or if, as a result of the pre-existing condition, the employee suffers a new, distinct injury other than increased pain, then the work injury is compensable.

As a result, "if an injury does not cause an actual progression or aggravation of the underlying, pre-existing condition, the claim is not compensable." *Memphis Light Gas & Water Div. v. Pearson*, No. W2018-01511-SC-WCM-WC, 2020 WL 1062871, at *9 (Tenn. Workers' Comp. Panel Feb. 26, 2020). "Specifically, if the injury results only in an increase in pain with no corresponding permanent anatomical change, then there is no new compensable injury." *Id.*

Here, the trial court explained that while Dr. Dalal testified that the work incident made Employee's preexisting condition symptomatic, he did not discuss how the work injury advanced the preexisting condition or caused a new, distinct injury. As a result, the trial court found that Employee had not rebutted the presumption of correctness afforded the opinions of the authorized treating physicians that Employee did not suffer any permanent impairment as a result of the work incident.

Employee's attorney argues that the findings by Dr. Dalal during the independent medical evaluation correlate to the complaints of the Employee and some of the findings by her treating physicians. However, neither Dr. Parsioon nor Dr. Murrell ever found Employee to have a positive straight leg raise test or any muscle weakness in her legs. Dr. Murrell actually saw her again in July and August 2021, when she had some recurrent symptoms and wanted to return to the chiropractor for additional decompression therapy. Even then, the straight leg raise was negative bilaterally and a follow-up MRI did not show any significant change. Dr. Murrell testified that Employee's response to treatment and her break from treatment for over a year, as well as her working seven days a week without restrictions, supported his opinion that there was not a permanent injury from the work altercation.

Upon review of the record, we find that the evidence does not preponderate against the trial court's findings.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Costs on appeal are taxed to Plaintiff-Appellant Patrece Edwards-Bradford, for which execution may issue if necessary.

THOMAS J. WRIGHT, SENIOR JUDGE

7

IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT JACKSON

## PATRECE EDWARDS-BRADFORD v. KELLOGG COMPANY ET AL.

**Appeal from the Court of Workers' Compensation Claims**
**No. 2021-08-0418**

**No. W2022-01097-SC-R3-WC**

FILED

SEP 0 5 2023

Clerk of the Appellate Courts
Rec'd By

## JUDGMENT ORDER

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs are assessed to Plaintiff-Appellant Patrece Edwards-Bradford, for which execution may issue if necessary.

It is so ORDERED.

PER CURIAM